2007 UT App 43
**EAGALA, INC., Petitioner,**

v.

**DEPARTMENT OF WORKFORCE SERVICES, Workforce Appeals Board; and Gregory W. Kersten, Respondents.**

No. 20060340–CA.

Court of Appeals of Utah.

Feb. 15, 2007.

Gabrielle L. Caruso, Van Cott Bagley Cornwall & McCarthy, Park City, for Petitioner.

Suzan Pixton, Dept. of Workforce Services, Salt Lake City, for Respondents.

Before BENCH, P.J., McHUGH and THORNE, JJ.

## OPINION

McHUGH, Judge:

¶ 1 Petitioner the Equine Assisted Growth and Learning Association, Inc. (EAGALA) seeks judicial review of Respondent Workforce Appeals Board's (the Board's) final order ruling that EAGALA did not have just cause to terminate Respondent Gregory W. Kersten. *See* Utah Code Ann. § 35A–4–405(2)(a) (2005). We affirm.

## BACKGROUND

¶ 2 Kersten and Lynn Thomas founded EAGALA in 1999 as a nonprofit corporation promoting equine assisted therapy. Kersten was the chairman of the company's board of trustees. Kersten and Thomas both resigned from the board in 2005 because they were collecting salaries. Kersten then became the company's president and chief executive officer.

¶ 3 On November 16, 2005, Kersten was notified that the board of directors had voted unanimously to terminate his employment. EAGALA claimed that Kersten misused corporate funds when, among other things, he charged EAGALA for the repair of his tractor, for veterinary care of his horses, for payments on his house and barn, and for renting office space in his home even after most of EAGALA's offices had moved to a different location. EAGALA also contended that Kersten verbally abused board members and failed to comply with the directives of the board by not submitting a strategic plan for the company.

¶ 4 After receiving notification that he had been terminated, Kersten applied for benefits under the Employment Security Act. The Department of Workforce Services initially denied Kersten's claim, finding that he was discharged from his job for an act constituting a crime that he admitted or of which he had been convicted. Kersten appealed that decision and sought a hearing before an administrative law judge (ALJ).

¶ 5 Around 8 a.m. on the morning of the hearing, EAGALA faxed documentary evidence to the ALJ and emailed copies of the documents to Kersten. During the 3 p.m. telephonic hearing, Kersten told the ALJ that he had not checked his email that day and therefore had not received the documents. The ALJ then determined that the documents would not be received as evidence.

¶ 6 After the hearing, the ALJ ruled that EAGALA failed to prove that it had just cause to terminate Kersten because EAGALA did not show that Kersten was culpable for his conduct or that he had knowledge that it was wrong. Therefore, EAGALA was found to be liable for a share of the unemployment benefit costs paid to Kersten. EAGALA appealed the ALJ's decision to the Board, arguing that just cause was demonstrated and that the documentary evidence should have been admitted. The Board adopted the ALJ's findings of fact and affirmed the ALJ's decision, concluding that EAGALA did not unequivocally disallow Kersten's expenditures. The Board's decision did not make any reference to the excluded documentary evidence. EAGALA seeks review of the Board's decision by this court.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 7 EAGALA first argues that the Board did not "decide[ ] all of the issues requiring resolution," Utah Code Ann. § 63–46b–16(4)(c) (2004), because it failed to rule on the ALJ's decision to exclude the documentary evidence faxed the morning of the hearing. Issues raised under Utah Code section 63–46b–16(4)(c) are questions of law to which we apply a correction of error standard. *See SEMECO Indus., Inc. v. State Tax Comm'n,* 849 P.2d 1167, 1171 (Utah 1993).

■ ¶ 8 EAGALA also challenges the Board's factual findings supporting its conclusion that EAGALA did not have just cause to terminate Kersten. *See* Utah Code Ann. § 63–46b–16(4)(g).

[T]his court grants great deference to an agency's findings, and will uphold them if they are supported by substantial evidence when viewed in light of the whole record before the court. Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . It is the petitioner's duty to properly present the record, by marshaling all of the evidence supporting the findings and showing that, despite that evidence and all reasonable inferences that can be drawn therefrom, the findings are not supported by substantial evidence.

*Department of the Air Force v. Swider,* 824 P.2d 448, 451 (Utah Ct.App.1991) (quotations and citations omitted).

██ ¶ 9 Finally, EAGALA contends that the Board erred when it concluded that EAGALA did not have just cause to terminate Kersten. *See* Utah Code Ann. § 63–46b–16(4)(d). "When we review an agency's application of the law to a particular set of facts, we give a degree of deference to the agency." *Autoliv ASP, Inc. v. Department of Workforce Servs.,* 2001 UT App 198, ¶ 16, 29 P.3d 7 (quotations and citations omitted). Application of the Employment Security Act "requires little highly specialized or technical knowledge . . . uniquely within the [Board's] expertise"; therefore, we grant "moderate deference" to the Board's decision. *Id.* (alteration in original) (quotations and citations omitted). "Thus, we will uphold the [Board's] decision so long as it is within the realm of reasonableness and rationality." *Id.* (alteration in original) (quotations and citations omitted).

## ANALYSIS

### I. Exclusion of Documentary Evidence

¶ 10 EAGALA first argues that the Board erred by failing to address the ALJ's refusal to admit documentary evidence EAGALA faxed to the ALJ and emailed to Kersten the morning of the hearing. According to EAGALA, the Board failed to "decide[ ] all of the issues requiring resolution," Utah Code Ann. § 63–46b–16(4)(c), and instead of excluding the documents, the ALJ should have followed the relevant administrative rule, which provides:

Parties may introduce relevant documents into evidence. Parties must mail, fax, or deliver copies of those documents to the ALJ assigned to hear the case and all other interested parties so that the documents are received prior to the hearing. Failure to prefile documents may result in a delay of the proceedings. If a party has good cause for not submitting the documents prior to the hearing or if a party does not receive the documents sent by the Appeals Unit or another party prior to the hearing, the documents will be admitted after provisions are made to insure due process is satisfied. At his or her discretion, the ALJ can either:

(a) reschedule the hearing to another time;

(b) allow the parties time to review the documents at an in-person hearing;

(c) request that the documents be faxed during the hearing, if possible, or read the material into the record in case of telephone hearing; or

(d) leave the record of the hearing open, send the documents to the party or parties who did not receive them, and give the party or parties an opportunity to submit additional evidence after they are received and reviewed.

Utah Admin. Code Ann. R994–508–109(11) (2006). Kersten claimed that he had not checked his email the morning of the hearing and thus had not received the documents. After learning this, the ALJ stated that he would not address the documents or admit them into the record. The ALJ also stated, however, that he would not "prevent any discussion or verbal testimony regarding anything that might be contained in those documents."

██ ¶ 11 Under the plain language of the rule, the proper course would have been to order one of the enumerated options, such as rescheduling the hearing, reading the documents into the record, or resending the documents to Kersten. However, we need not determine whether the Board erred by failing to address this issue because, even as-

suming the documents should have been admitted, EAGALA was not prejudiced.

¶ 12 EAGALA asserts that the excluded documents were crucial because they included checks written by Kersten to pay for both his horse's veterinary expenses and the construction of his barn. The documents also included corporate credit card statements showing charges for vehicle maintenance, fuel, and dry cleaning.

¶ 13 We disagree that the introduction of these documents was critical because the ALJ allowed extensive questioning and discussion on all of the contested expenditures. The ALJ asked Kersten whether he had a corporate credit card, whether he was given any instructions on what the card could be used for, and whether he used the card for his dry cleaning bills. The ALJ further questioned Kersten about the veterinary bills and the vehicle costs.

¶ 14 EAGALA's witnesses were also asked about these expenditures. Thomas told the ALJ that Kersten "purchased a barn for his personal property," "used EAGALA funds to support his personal horses," and "purchased items—tools [and] fencing materials that benefitted his personal property." EAGALA's counsel specifically asked Thomas whether Kersten "would ... make out checks for personal use." Thus, because these expenditures were repeatedly discussed, EAGALA was not harmed by the exclusion of the documents. *Cf. State v. Stephens*, 667 P.2d 586, 588 (Utah 1983) ("Where evidence is excluded by the trial court, any error which may have resulted from such exclusion is cured where the substance of the evidence is later admitted through some other means.").[1]

## II. The Board's Factual Findings

¶ 15 EAGALA next contends that the Board's decision is not supported by substantial evidence. We disagree. Although EA-

GALA has marshaled the evidence in support of the Board's decision, it has not demonstrated "that despite the supporting facts, ... the findings are not supported by substantial evidence." *Grace Drilling Co. v. Board of Review of the Indus. Comm'n*, 776 P.2d 63, 68 (Utah Ct.App.1989).

¶ 16 We review the whole record before the court to determine whether the Board's findings are supported by substantial evidence. *See* Utah Code Ann. § 63–46b–16(4)(g). It is not this court's place to "substitute its judgment as between two reasonably conflicting views, even though we may have come to a different conclusion had the case come before us for de novo review." *Grace Drilling Co.*, 776 P.2d at 68. Similarly, "[i]t is the province of the Board, not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the Board to draw the inferences." *Id.*

¶ 17 The Board found that because EAGALA did not make a clear showing that Kersten knew his expenses were improper, EAGALA failed to show that just cause existed. After reviewing the record, we conclude that this finding is supported by substantial evidence. This evidence includes Kersten's testimony that, to his knowledge, he did not use corporate funds improperly and believed he was authorized to charge EAGALA for dry cleaning his uniform; for the maintenance of his vehicle that he used for company events; and for repair of his tractor that was used for EAGALA purposes. He further testified that he did not charge EAGALA for the care of his personal horses. Further, there is no dispute in the record that Kersten never received a negative job performance review. And, Kersten stated that none of the Board members ever complained to him about his expenditures or behavior.

---

1. EAGALA further contends that it was harmed because it could not use the documents to impeach Kersten's testimony. We disagree. For the most part, Kersten admitted to using corporate funds for the expenses shown in the documents, but he explained why he believed it was proper to do so. Thus, the documents would not have shown Kersten to be untruthful. Moreover, and importantly, the ALJ's ruling did not prevent EAGALA from making specific reference to the documents or even reading portions of the documents into the record during its examination of Kersten.

¶ 18 The contrary evidence includes the testimony of Thomas and Amy Blossom, EAGALA board members, that Kersten did not have permission to use company funds for his dry cleaning, vehicle, tractor, and veterinary expenses. Thomas also testified that she confronted Kersten about his continued withdrawal of $1000 per month for rent even after most of the EAGALA offices had moved out of Kersten's home. Thomas further testified that Kersten used corporate money to start a tack and saddle business and to build a barn, improper expenditures that the Board only discovered recently. Thomas also testified about incidents where Kersten verbally abused EAGALA board members.

¶ 19 Thus, many of the facts surrounding Kersten's expenditures and termination are disputed, with each side offering its own version of events. However, as stated, it is not our duty to resolve these conflicts, *see id.*; rather, it is the province of the ALJ to determine which party is more credible where divergent testimony is given. As noted by the Board in adopting the ALJ's findings, the ALJ in this case "[wa]s in the unique position of being an active participant in the hearing, interacting with the parties and also questioning the witnesses" and, in so doing, "found that the claimant was credible" because he "was able to provide an explanation as to why the expenses should have been paid by the corporation." *See Albertsons, Inc. v. Department of Employment Sec.*, 854 P.2d 570, 574–75 (Utah Ct. App.1993) (noting that testimony of parties diverged as to whether claimant intentionally damaged forklift, but court was not in position "to second guess the detailed findings of the ALJ"). We therefore decline to disturb the ALJ's and Board's factual findings because they are supported by substantial evidence.

### III. The "Just Cause" Determination

■ ¶ 20 Finally, EAGALA asserts that the Board erroneously concluded that no just cause existed to terminate Kersten. An employee will not be awarded unemployment benefits if the Department of Workforce Services concludes that the employee was dis-

charged for just cause. *See* Utah Code Ann. § 35A–4–405(2)(a); *see also Autoliv ASP, Inc. v. Department of Workforce Servs.*, 2001 UT App 198, ¶ 17, 29 P.3d 7; *Bhatia v. Department of Employment Sec.*, 834 P.2d 574, 577 (Utah Ct.App.1992). "To establish 'just cause,' three elements must be present: culpability, knowledge, and control." *Autoliv ASP*, 2001 UT App 198 at ¶ 17, 29 P.3d 7; *see also* Utah Admin. Code Ann. R994–405–202 (2006). "The employer must establish each of the three elements ... for the [administrative agency] to deny benefits." *Gibson v. Department of Employment Sec.*, 840 P.2d 780, 783 (Utah Ct.App.1992). Because we affirm the ALJ and the Board's finding that Kersten did not have knowledge that his conduct was inappropriate, we need not examine the culpability and control prongs of the just cause inquiry.

¶ 21 To establish just cause,

> [t]he worker must have had knowledge of the conduct the employer expected. There does not need to be evidence of a deliberate intent to harm the employer; however, it must be shown that the worker should have been able to anticipate the negative effect of the conduct. Generally, *knowledge may not be established unless the employer gave a clear explanation of the expected behavior or had a written policy, except in the case of a violation of a universal standard of conduct.* A specific warning is one way to show the worker had knowledge of the expected conduct. After a warning the worker should have been given an opportunity to correct the objectionable conduct.

Utah Admin. Code Ann. R994–405–202(2) (emphasis added). Thus, our inquiry focuses on whether EAGALA's board of directors gave Kersten a clear explanation regarding his use of corporate funds or whether Kersten violated a universal standard of conduct. *See Autoliv ASP*, 2001 UT App 198 at ¶ 18, 29 P.3d 7.

■ ¶ 22 Kersten asserts that he never knew that his expenditures were inappropriate because EAGALA did not provide him with any warnings or written notice. EAGALA responds by contending that the trustees did not know about the misuse of funds, and

even if Thomas knew about Kersten's expenditures, Thomas was Kersten's underling and was therefore powerless to do anything about it. Alternatively, EAGALA contends that Kersten violated a universal standard of conduct by engaging in self-dealing.

¶ 23 We disagree with both of EAGALA's contentions. First, it was "within the realm of reasonableness and rationality," *id.* at ¶ 16, for the Board and ALJ to conclude that knowledge was not established. EAGALA neither warned Kersten to stop his spending practices[2] nor took any other action to block Kersten's use of his corporate credit card or his access to the company bank account. The Board and ALJ also concluded that EAGALA did not take any steps to stop Kersten's monthly withdrawal of $1000 for rent payments after EAGALA moved its offices out of Kersten's home. EAGALA repeatedly asserts that Kersten should have sought permission from the board of trustees before making his expenditures. This may well have been the more prudent course of action, but, under the rule quoted above and the specific facts of this case, it was the *employer's* duty to provide a clear explanation of expected conduct. *See* Utah Admin. Code Ann. R994-405-202(2). Kersten was a founder of EAGALA and served as chairman of the board of trustees for six years when he became president and chief executive officer. The business was conducted from offices located in the basement of Kersten's home, company horses were sometimes stabled in Kersten's barn, and Kersten used his personal equipment to keep the offices accessible during the winter and for other EAGALA-related purposes. By the time the structure of the organization changed in 2006, the lines between personal and business expenditures had been blurred by practice. EAGALA made no attempt to notify Kersten that those past practices would no longer be tolerated. Under the unique circumstances of this case, we cannot say that the Board's conclusion is outside the bounds of reasonableness and rationality.

¶ 24 The Board also reasonably concluded that Kersten did not violate a universal standard of conduct by engaging in self-dealing because Kersten "gave credible testimony as to why he was authorized to charge [his] expenses to the corporation." We likewise do not believe that Kersten's behavior reached a level where it violated a universal standard of conduct. *See, e.g., Autoliv ASP,* 2001 UT App 198 at ¶ 27, 29 P.3d 7 (concluding that emailing sexually explicit jokes, pictures, and videos in the workplace "constitutes a flagrant violation of a universal standard of behavior"); *Bhatia v. Department of Employment Sec.,* 834 P.2d 574, 580 (Utah Ct.App.1992) (concluding that "angrily walking off the job in the middle of a busy shift at a crucial time for the employer's business, leaving others to assume ... responsibilities, and us[ing] vulgarity within the hearing of customers" constituted a violation of a universal standard of behavior). Here, the lines between corporate and personal activities and expenditures were blurred by historic operations. Kersten provided office space for the company in his home and stabled company horses in his barn. Unlike more traditional commercial enterprises, these practices created confusion about the appropriate use of corporate funds. Under the facts of this case, we affirm the Board's determination that Kersten did not violate a universal standard of conduct.

### CONCLUSION

¶ 25 EAGALA was not prejudiced by the exclusion of the documentary evidence because EAGALA was free to use the information contained in those documents at the hearing and Kersten admitted the expenditures reflected by the documents. The ALJ and Board's decisions are supported by substantial evidence. Finally, the ALJ and Board did not exceed the bounds of reasonableness and rationality in determining that EAGALA did not have just cause to terminate Kersten.

¶ 26 We affirm.

2. At most, the record shows that Thomas told Kersten that his expenditures blurred the lines between company use and personal use but did not specify what expenditures in particular were problematic.

¶ 27 WE CONCUR: RUSSELL W. BENCH, Presiding Judge and WILLIAM A. THORNE JR., Judge.