2011 UT App 142

PROSPER TEAM, INC., Petitioner,

v.

DEPARTMENT OF WORKFORCE SERVICES, WORKFORCE APPEALS BOARD; and Phillip L. Hickman, Respondent.

No. 20100385–CA.

Court of Appeals of Utah.

May 5, 2011.

Daniel J. Anderson, Provo, for Petitioner.

Suzan Pixton, Salt Lake City, for Respondent Department of Workforce Services, Workforce Appeals Board.

Before Judges DAVIS, VOROS, and ROTH.

## MEMORANDUM DECISION

ROTH, Judge:

¶ 1 Prosper Team, Inc. (Prosper) seeks review of the Utah Workforce Appeals Board (the Board) decision upholding an administrative law judge's (the ALJ) award of unemployment benefits to claimant, Phillip L. Hickman. The Board awarded benefits to Hickman because it concluded that Prosper terminated him without just cause. We affirm.

¶ 2 "[Unemployment] benefits will be denied if the claimant was discharged for just cause.... However, not every legitimate cause for discharge justifies a denial of benefits. A just cause discharge must include some fault on the part of the claimant." Utah Admin. Code R994–405–201; *see also Salt Lake Donated Dental Servs., Inc. v. Department of Workforce Servs.*, 2011 UT App 7, ¶ 5, 246 P.3d 1206 ("An employee will not be awarded unemployment benefits if the Department of Workforce Services concludes that the employee was discharged for just cause." (internal quotation marks omitted)). To establish just cause, the employer must prove three elements: culpability, knowl-

edge, and control. *See* Utah Admin. Code R994–405–202; *see also Albertsons, Inc. v. Department of Emp't Sec.*, 854 P.2d 570, 573 (Utah Ct.App.1993) (observing that it is the employer's burden to prove just cause for terminating the employee).

¶ 3 The Board awarded Hickman unemployment benefits because it concluded that Prosper had failed to demonstrate the control and knowledge elements of just cause.[1] "To satisfy the element of control in cases involving a discharge due to unsatisfactory work performance, it must be shown the claimant had the ability to perform the job duties in a satisfactory manner." Utah Admin. Code R994–405–202(3)(b). "[I]f the claimant made a good faith effort to meet the job requirements but failed to do so due to a lack of skill or ability and a discharge results, just cause is not established." *Id.* But "continued inefficiency, repeated carelessness or evidence of a lack of care expected of a reasonable person in a similar circumstance may satisfy the element of control if the claimant had the ability to perform satisfactorily." *Id.* R994–405–202(3)(a).

¶ 4 The ALJ found that Hickman's ill health and a poor economy contributed to his decline in performance between June 2009 and his discharge in October 2009. She then concluded that Prosper had not established control because "there were too many other factors [besides his ability] involved to give [Hickman] control over his sales, including the poor economy and the high unemployment rate." The Board affirmed the ALJ's decision, adopting the ALJ's factual findings in full but making some additional conclusions. The Board stated that "[c]oinciding with [Hickman's] fall in production were the failing economy, a need for potential purchasers to more carefully consider expenditures, and health issues that caused [Hickman] to be absent or available less than full-time for a considerable period."

---

1. The Board correctly noted that "[i]f there is inadequate proof of even a single just cause factor, benefits must be allowed." *See Albertsons, Inc. v. Department of Emp't Sec.*, 854 P.2d 570, 574 (Utah Ct.App.1993) ("The failure to establish any one of the three factors is fatal to

... [the employer's] claim of just cause." (omission and alteration in original) (internal quotation marks omitted)). Because we agree that Prosper failed to establish control, we do not address the knowledge element.

¶ 5 On appeal, Prosper contends that the Board, in focusing on the role of the economy in Hickman's declining sales, made it impossible for employers to terminate any sales employees for just cause during a down market. Prosper asserts the Board should have considered Hickman's own inefficiency and lack of care as the major contributors to his slumping sales. According to Prosper, the record shows that Hickman, based on his past performance, had the necessary skills to make sales. Hickman's supervisor testified that Hickman was one of the company's top performers for the first three-and-a-half years he was employed with Prosper. In the final six months leading up to his termination, however, Hickman managed to make only two sales, a tally that was well below Prosper's expectations for him. During this time, Hickman was afforded the same opportunities as Prosper's other sales employees because calls from new customers were randomly transferred to each individual on a sales team and sales representatives were allowed to take as many calls as they could handle. Prosper also testified that the other salespeople were succeeding despite the adverse economic conditions. Prosper argues that the Board instead should have determined that Hickman's decline in performance was due to his poor decision making and attitude. For example, Hickman's supervisor testified at the hearing that Hickman would block calls from potential customers by putting his phone on "busy," prematurely terminate calls when a potential customer showed reluctance in purchasing, and spend too much time on calls making excessive, unrelated conversation with customers. He also characterized Hickman's attitude as "not positive." Considering this evidence, Prosper maintains that, given Hickman's undisputed ability to make sales, his decline in performance was caused by his continued inefficiency rather than any external factor, such as the economy.

¶ 6 "The Board's findings of fact, 'if supported by evidence, are conclusive and the jurisdiction of the court is confined to questions of law.'" *Salt Lake Donated Dental Servs.*, 2011 UT App 7, ¶ 3, 246 P.3d 1206 (quoting Utah Code Ann. § 35A–4–508(8)(e) (2005)). Consequently, we will reverse those findings "only if [they] are not supported by substantial evidence." *See id.* (internal quotation marks omitted). After determining whether the factual support is adequate, we next review "an agency's application of the law to [the] particular set of facts." *EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 9, 157 P.3d 334 (internal quotation marks omitted). In so doing, "we give a degree of deference to the agency" and "will uphold the [Board's] decision so long as it is within the realm of reasonableness and rationality." *Salt Lake Donated Dental Servs.*, 2011 UT App 7, ¶ 4, 246 P.3d 1206 (alteration in original) (internal quotation marks omitted).

¶ 7 The Board found that Hickman "did his best to keep a positive attitude" and that he implemented the suggestions he received from his supervisor. The record supports this finding. Before terminating him, Prosper offered Hickman additional training and coaching in an effort to improve his sales. The record contains notes made by Hickman's supervisor during these coaching sessions, which reveal that Hickman was "very motivated to change" and that he did an excellent job of following the script, sounding sincere, showing confidence, being positive, being professional, and building relationships. Hickman's supervisor further testified that a "huge contributor" to an employee's success in the company is "attitude towards the leads." Although Prosper now contends that the Board failed to give its testimony that Hickman had a negative attitude due weight, the coaching notes are directly contrary to that testimony. And, when asked to clarify the discrepancy between the coaching notes and his testimony that Hickman's attitude was "not positive," Hickman's supervisor focused not on an attitude problem, emphasizing that Hickman "had a great skill set, and ... a strong work ethic," but on his concern that Hickman lacked confidence in Prosper's product. The Board not only did not ignore this testimony, but expressly acknowledged it, stating that while "[t]he supervisor believed [Hickman] did not appear to be confident about the Employer's programs or its clients ... [, Hickman] did his best to show a positive

attitude." Although Prosper has identified evidence in the record that may contradict this finding—for example, Hickman blocked calls by placing his phone on "busy" and terminated calls prematurely when he sensed reluctance from the customer—"[i]t is the province of the Board, not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the Board to draw the inferences," *see Salt Lake Donated Dental Servs., Inc. v. Department of Workforce Servs.,* 2011 UT App 7, ¶ 14, 246 P.3d 1206 (internal quotation marks omitted). So long as there is substantial evidence to support the Board's findings, we will uphold them. *See Hurley v. Board of Review of Indus. Comm'n,* 767 P.2d 524, 526 (Utah 1988) (recognizing that the Board's findings of fact are conclusive and will not be reversed if supported by substantial evidence, even if the record allows a different conclusion); *see also Stegen v. Department of Emp't Sec.,* 751 P.2d 1160, 1163 (Utah Ct. App.1988) (allowing the Board to determine the weight to be given testimony and affirming the Board's conclusion that the employee had control over his conduct because although some of the reasons for the employee's discharge were not within his control, most of the contributing circumstances were).

¶ 8 Prosper also downplays the impact of the flagging economy on Hickman's sales. For example, Prosper contends that the Board gave too much weight in its decision to the impact of the economy because the word "economy" was used only once during the hearing. At oral argument, however, the Board pointed to at least one other place in the transcript where the customers' financial inabilities were cited as a factor in Hickman's declining sales. More importantly, Prosper does not dispute the poor economic conditions at the time Hickman was terminated but argues that they did not affect Hickman's performance. Indeed, Prosper correctly points out that the record contains testimony from Prosper that Hickman's "numbers were so low that they weren't contributing to the team's success" as well as Hickman's own admission that, despite a slumping economy, "some of the others stepped it up." The record, however, is devoid of any quantitative proof that would have allowed the Board to compare the degree of disparity between Hickman's sales and the sales of other similarly situated employees. It is Prosper's burden to show that the discharge was due to conduct within Hickman's control. *See Albertsons, Inc. v. Department of Emp't Sec.,* 854 P.2d 570, 573 (Utah Ct.App.1993). And Prosper's evidence failed to persuade the Board that the economy was not a factor in Hickman's decline in performance.

¶ 9 As a further matter, in focusing its appeal on whether the economy impacted Hickman's performance, Prosper simply dismisses Hickman's poor health and its independent effect on his performance, particularly in a down economy where top performance may be crucial. Though it might have decided otherwise, the Board could reasonably have concluded from the facts on record that Hickman's health issues had a substantial impact on his ability to make sales. For years, Hickman was one of the company's top performers, and it was not until the time preceding his hernia surgery in June 2009 that his sales began to decline. In his testimony, Hickman acknowledged his decrease in sales but attributed it, in part, to his poor health, stating, "I hadn't had the sales like I used to get but I wasn't feeling well." The Board accepted this statement as true and adopted it as part of its findings supporting its conclusion that Hickman's decline in performance was outside his control. In addition, the Board noted that Hickman's doctor had temporarily restricted him to part-time hours when he returned to work five days after the surgery, and on three other occasions, his supervisor sent him home because he did not look well, thus limiting his availability to receive sales calls and supporting his assertion that his health condition limited his output when compared with his past performance.

¶ 10 The points Prosper raises are not insubstantial and might have supported a different decision by the ALJ and the Board. But the Board apparently resolved disputed issues in favor of Hickman and gave evidence that favored his position more weight, in the

end concluding that Prosper had not met its burden to establish that the conduct that caused Hickman's discharge was within his control, *see id.* (placing the burden of proof on the employer). *See also Hurley,* 767 P.2d at 526–27 (affording agency findings substantial deference where they are supported by substantial evidence, "even if another conclusion from the evidence is permissible"); *cf. Kimball v. Kimball,* 2009 UT App 233, ¶ 20 n. 5, 217 P.3d 733 ("The pill that is hard for many appellants to swallow is that if there is evidence supporting a finding, absent a legal problem—a 'fatal flaw'—with that evidence, the finding will stand, even though there is ample record evidence that would have supported contrary findings."). Because there is substantial evidence in the record to support the Board's findings that Hickman's health and the poor economic conditions affected his ability to make sales, its conclusion that the employer failed to establish control was "within the realm of reasonableness and rationality." *See Salt Lake Donated Dental Servs.,* 2011 UT App 7, ¶ 4, 246 P.3d 1206 (internal quotation marks omitted).

¶ 11 Prosper contends that the Board's decision to award Hickman benefits under these facts means that no employer can justify termination of a sales employee for just cause in a down economy, that is, it establishes a sort of strict liability or a presumption that cannot be overcome. We do not agree. Certainly, under present law, employees laid off or terminated solely for economic reasons, whether as the result of a general downturn or circumstances affecting only their employer, remain eligible for benefits if they otherwise qualify. *See* Utah Admin. Code R994–405–201 ("[N]ot every legitimate cause for discharge justifies a denial of benefits. A just cause discharge must include some fault on the part of the claimant. A reduction of force is considered a discharge without just cause."). This is because, to establish just cause, the employer must show that "[t]he *conduct causing the discharge* [was] ... within the *claimant's* control." *Id.* R994–405–202(3)(a) (emphases added). In other words, an employee's conduct is the measuring stick for the control element, not simply external factors, such as the economy. *See id.; see also id.* R994–405–202(3)(b) ("[I]n cases involving a discharge due to unsatisfactory work performance, it must be shown the claimant had the ability to perform the job duties in a satisfactory manner."). Thus, an economic downturn alone would not preclude a "just cause" termination if the employer proves that the employee was otherwise capable of performing satisfactorily. But if, as the Board concluded in this case, the employee was doing what he could to succeed in adverse economic conditions, yet still yielded unsatisfactory results, a conclusion that the economy played a significant part in his declining performance is supportable. Therefore, the Board's application of the control element in this case does not establish a strict liability standard for awarding unemployment benefits to employees terminated in a poor economy, as Prosper asserts. Rather, regardless of the market, the rule requires the employer to show that an employee is capable of performing but did not, due to circumstances within his or her control.

¶ 12 Because the record contains substantial evidence to support the Board's conclusion that Prosper failed to prove the required control element, we affirm.

¶ 13 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and J. FREDERIC VOROS JR., Judge.