2013 UT App 145

## THE UTAH COURT OF APPEALS

KIM M. HADLEY,
Petitioner,
*v.*
WORKFORCE APPEALS BOARD,
DEPARTMENT OF WORKFORCE SERVICES,
Respondent.

Memorandum Decision
No. 20120282-CA
Filed June 13, 2013

Original Proceeding in this Court

Philip C. Patterson, Attorney for Petitioner
Jaceson R. Maughan, Attorney for Respondent

JUDGE CAROLYN B. MCHUGH authored this Memorandum
Decision, in which JUDGES WILLIAM A. THORNE JR. and
J. FREDERIC VOROS JR. concurred.

McHUGH, Judge:

¶1     Petitioner Kim M. Hadley seeks judicial review of orders of
the Workforce Appeals Board (the Board) affirming a denial of
unemployment insurance benefits, *see* Utah Code Ann. § 35A-4-
405(1)(b) (LexisNexis Supp. 2012), and imposing an overpayment
and civil penalty for fraud, *see id*. § 35A-4-405(5)(c). The Board
concluded that Hadley had voluntarily quit her job without good
cause and that it would not be contrary to equity and good
conscience to deny unemployment benefits to her. We decline to
disturb the Board's ruling.

¶2     Hadley worked as a teacher at the Ogden campus of the
Utah Schools for the Deaf and the Blind (USDB) from July 2004
until she voluntarily quit on June 3, 2011. Hadley taught students

who, in addition to having vision or hearing disabilities, had behavioral, intellectual, or physical disabilities. Sometime in 2010, USDB's superintendent implemented a new administrative policy that eventually resulted in students with multiple disabilities being transferred to their local school districts. Hadley alleges that, as a part of that policy, teachers were required to attend a meeting with USDB's administration to discuss and reach decisions on a student's evaluation and placement prior to a formal Individualized Education Plan (IEP) meeting. Under the federal Individuals with Disabilities Education Act, a student's parents must be notified of and given an opportunity to participate in an IEP meeting. *See generally* 20 U.S.C. § 1415 (2006).

¶3     In January 2011, USDB's principal asked Hadley to attend such a pre-IEP meeting to discuss the progress, educational goals, and future placement of one of Hadley's students. Hadley told the principal that she had never been asked to attend a pre-IEP meeting before and that she did not think such a meeting was appropriate or legal because it did not involve the parents. The principal informed Hadley that she was required to attend the pre-IEP meeting and that such meetings were not illegal. After Hadley attended the pre-IEP meeting, the student's parent was invited to attend a formal IEP meeting. During that IEP meeting, Hadley felt that the parent was intimidated into agreeing to transfer the student to the student's local district, which Hadley believed was not properly equipped to assist the student.

¶4     Despite Hadley's objections to the policy, USDB sent Hadley a letter of intent during the spring of 2011 to renew her teaching contract for the following school year. Rather than renewing her contract, Hadley told USDB's human resource manager that she would not be returning the following year. She reiterated her unhappiness with the policy and explained that she felt she should seek employment with the school districts where her students were being transferred.

¶5     On June 23, 2011, Hadley began filing claims for unemployment benefits. Rather than informing the Department of Workforce Services (the Department) that she had voluntarily quit, Hadley reported that she was discharged from her employment as part of a reduction in force. Based on that information, the Department initially paid unemployment benefits to Hadley. However, the Department later determined that she had voluntarily quit without good cause and had received benefits to which she was not entitled. The Department also determined that a fraud penalty should be assessed because Hadley knowingly withheld material information regarding the reason for her employment separation.

¶6     Hadley appealed the Department's decisions to an Administrative Law Judge (the ALJ). During an evidentiary hearing before the ALJ, Hadley testified that one of the reasons she quit was because she did not like the policy, which she believed was implemented in response to cuts to USDB's budget and violated the right of her students' parents to participate meaningfully in the IEP meeting. Hadley felt that the pre-IEP meetings were designed to build consensus among the teachers and administration to transfer students to their local districts prior to the actual IEP meetings with the parents. She testified that the policy discriminated against students with multiple disabilities by returning them to their local school districts, which she believed were ill-equipped to meet those students' needs.

¶7     Despite this testimony, the ALJ determined that Hadley had voluntarily quit her job, that she had not established good cause for quitting, and that it was not contrary to equity and good conscience to deny her benefits. Hadley appealed the ALJ's decision. The Board adopted the ALJ's findings and conclusions and affirmed the denial of unemployment benefits, the overpayment in the amount of $10,848, and the civil fraud penalty in the amount of $10,848, for a total overpayment amount of $21,696. Hadley now petitions this court for review of the Board's decision.

¶8 On appeal, Hadley does not challenge the Board's determination that she voluntarily quit without good cause. Instead, Hadley argues that the Board acted arbitrarily and capriciously and abused its discretion in determining that she did not satisfy the equity and good conscience standard.[1] The Utah Legislature has provided that "[a] claimant may not be denied eligibility for benefits if the claimant leaves work under circumstances where it would be contrary to equity and good conscience to impose a disqualification." Utah Code Ann. § 35A-4-405(1)(b) (LexisNexis Supp. 2012); *see also* Utah Admin. Code R994-405-103(1) ("If the good cause standard has not been met, the equity and good conscience standard must be considered in all cases . . . ."). Specifically, Hadley alleges that the Board minimized or failed to consider substantial evidence justifying her decision to quit and that such evidence establishes that it would be unreasonably harsh or an affront to fairness to deny her benefits. *See* Utah Admin. Code R994-405-103(1) ("If there are mitigating circumstances, and a denial of benefits would be unreasonably harsh or an affront to fairness, benefits may be allowed under the provisions of the equity and good conscience standard . . . .").

¶9 "'Determining what constitutes equity and good conscience presents a mixed question of law and fact on which we defer to the Board, so long as its decision falls within the limits of reasonableness and rationality.'" *Davis v. Department of Workforce Servs.*, 2012 UT App 158, ¶ 7, 280 P.3d 442 (mem.) (quoting *Wright v. Workforce Appeals Bd.*, 2011 UT App 137, ¶ 9, 254 P.3d 767 (mem.)). To establish that a denial of unemployment insurance benefits would be against equity and good conscience, the claimant

---

1. Hadley does not separately challenge the Board's decision to assess fraud penalties, arguing only that reversal of the Board's equity and good conscience decision will necessarily moot that decision. Indeed, Hadley admits that her description of the reason for her separation from employment as due to a reduction in force is not accurate.

must demonstrate that, among other things, she acted reasonably in deciding to quit. *See* Utah Admin. Code R994-405-103(1)(a). A claimant acts reasonably where "the decision to quit [is] logical, sensible, or practical" and "[t]here [is] evidence of circumstances which, although not sufficiently compelling to establish good cause, would have motivated a reasonable person to take similar action . . . ." *Id.*

¶10    The Board concluded that Hadley's "actions in this instance were not particularly reasonable," stating,

> Quitting a job prior to securing other employment is rarely practical. It makes little sense to quit a job with good pay in order to become unemployed with no pay because one disagrees with a particular policy. There are no mitigating factors that would cause the denial of benefits to be unduly harsh or an affront to fairness. There is no indication her continued employment would have been affected by a reduction in students or that [USDB's] policy jeopardized the rights of her students or their parents. The factors that motivated [Hadley] to quit would not have motivated a reasonable person to take similar action. [Hadley] failed to establish a reasonable basis to quit such that it satisfied equity and good conscience.

¶11    Hadley argues that it would be unduly harsh and an affront to fairness to deny her benefits because her decision to quit was reasonable given her concern that, even if USDB's pre-IEP meetings were technically legal, those meetings undermined the purpose of the actual IEP meetings and were contrary to the best interests of her students. Hadley also contends that her decision to quit was reasonable given her belief that she was "professionally and ethically compromised" by USDB's policy of returning her students to their local school districts where those districts lacked the

funding, personnel, resources, and curriculum necessary to assimilate these students.

¶12 Even accepting that Hadley had legitimate concerns regarding USDB's policy, we are not convinced that the limits of reason and rationality required the Board to determine that withholding benefits would be unreasonably harsh or an affront to fairness. "It is not this court's place to substitute its judgment as between two reasonably conflicting views, even though we may have come to a different conclusion had the case come before us for de novo review." *EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 16, 157 P.3d 334 (citation and internal quotation marks omitted). While we may have resolved this issue differently than the Board,[2] our review of its decision "is not an invitation for this court to engage in a free-wheeling judicial foray into the record and impose a decision based on our collective sense of equity and good conscience." *Bowdrey v. Workforce Appeals Bd.*, 2010 UT App 362U, para. 8 (mem.) (citation and internal quotation marks omitted). Instead, our analysis "must reflect the broad discretion conferred by the legislature upon [the Board]." *See id.* (citation and internal quotation marks omitted); *see also Anderson v. Department of Workforce Servs.*, 2013 UT App 70, ¶¶ 6–7 (per curiam) (declining to disturb the board's denial of benefits based on equity and good conscience despite the claimant's argument that he quit his job as a construction superintendent based on safety concerns related to the project); *Nave v. Department of Workforce Servs.*, 2012 UT App 156, ¶¶ 2, 6, 280 P.3d 449 (per curiam) (declining to disturb the board's denial of benefits based on equity and good conscience despite the claimant's argument that he was subjected to a hostile work environment); *Juback v. Department of Workforce Servs.*, 2005

---

2. Hadley's concern and discomfort were due to a commendable sense of loyalty and dedication. After seventeen years of working with students affected by multiple, severe challenges, she still had enough passion to quit her job in the hope of providing services to her transferred students in their local districts.

UT App 421U, paras. 8–9 (mem.) (declining to disturb the board's denial of benefits based on equity and good conscience despite the claimant's argument that the employer could not make payroll on time).

¶13    Applying that restraint, we conclude that the Board acted within the bounds of reason and rationality in concluding that Hadley's decision to quit was not "logical, sensible, or practical." *See* Utah Admin. Code R994-405-103(1)(a). Although the Board acknowledged Hadley's professional and ethical concerns, it concluded that Hadley had provided no evidence that USDB's policy actually discriminated against her students or their parents or that the policy is, in fact, illegal. To the contrary, Hadley admitted at the hearing that she was never asked to do anything illegal and she opined that IEP meetings with the students' parents satisfied the requirements of the federal Individuals with Disabilities Education Act, despite the pre-IEP meetings. Under these circumstances, the Board concluded that it was unreasonable for Hadley to quit before finding alternative employment.

¶14    We cannot say that it was irrational or unreasonable for the Board to conclude that Hadley could have continued working for USDB until she was able to find other employment.[3] Accordingly, the Board's determination that denying Hadley unemployment

---

3. Although Hadley also contends that, based on USDB's one-year term teaching contracts, she was "not ethically positioned to inform USDB that she would return for the [following] school year while concurrently seeking same year employment with a city or county school district," we decline to consider this argument because it was never raised before the Board. *See Rosen v. Saratoga Springs City*, 2012 UT App 291, ¶ 31, 288 P.3d 606 ("The preservation rule applies in agency appeals 'when the issue raised on appeal could have been resolved in the administrative setting.'" (quoting *ABCO Enters. v. Utah State Tax Comm'n*, 2009 UT 36, ¶¶ 10–11, 211 P.3d 382 (elaborating on scenarios in which the preservation rule applies in agency appeals))).

benefits was not contrary to equity and good conscience "falls within the limits of reasonableness and rationality." *See Davis v. Department of Workforce Servs.*, 2012 UT App 158, ¶ 7, 280 P.3d 442 (mem.) (citation and internal quotation marks omitted). We therefore decline to disturb the Board's rulings.

————