2025 UT App 201

## THE UTAH COURT OF APPEALS

JEFFREY M. JONES,
Petitioner,

*v.*

DEPARTMENT OF WORKFORCE SERVICES,
Respondent.

Opinion
No. 20250100-CA
Filed December 26, 2025

Original Proceeding in this Court

Luisa Gough, Attorney for Petitioner

Robert Andreasen, Attorney for Respondent

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES DAVID N. MORTENSEN and AMY J. OLIVER
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 Jeffrey M. Jones seeks judicial review of a decision of the Workforce Appeals Board (the Board) denying him unemployment benefits after he voluntarily quit his job. He challenges the Board's determinations that he failed to show good cause for quitting and that he failed to show that he was entitled to benefits under the standard of equity and good conscience. We are not persuaded by Jones's arguments, and we therefore decline to disturb the Board's decision.

## BACKGROUND

¶2 Jones's employment began in March 2021 when he was hired by a company as a night auditor. In January 2024, one of Jones's coworkers took a medical leave of absence, and the

employer offered Jones the extra work hours available due to that absence. This allowed Jones "to work at least full-time" until the coworker returned from medical leave in August 2024. After the coworker returned, the employer began to schedule Jones for only "20 to 24 hours per week."

¶3 In this same timeframe, a garnishment that Jones "had not fully expected" commenced on his wages. Additionally, Jones became unable to make the rental payments for a storage unit containing some of his belongings, which resulted in him being locked out of the storage unit and unable to access those belongings. Under these circumstances, Jones "found it difficult to get by financially without the extra hours he had been working during the previous eight months."

¶4 Jones then approached his employer about working more hours. Although the employer offered him some additional hours working in a different capacity, those extra hours did not result in sufficient wages and Jones "continued to find it hard to make ends meet."

¶5 Jones quit his job toward the end of October 2024, believing that by doing so his employer "would pay him a lump sum for his accumulated paid time off (PTO)." However, after Jones quit, he was informed by the employer's human resources department that the policy regarding the payment of unused PTO had been changed in 2022 and, pursuant to the new policy, Jones was not entitled to receive payment for his unused PTO upon termination.

¶6 Jones filed a claim for unemployment benefits. The Department of Workforce Services denied Jones's claim, determining both that Jones had not shown "good cause" for leaving his job and that benefits could not be allowed under the alternative "equity and good conscience provision." Jones appealed the denial of benefits.

¶7      An administrative law judge (the ALJ) thereafter held a hearing to address Jones's appeal, at which Jones argued he had good cause for leaving his job because he understood that he would be paid for his PTO upon leaving the job and he saw that as his only way to access those needed funds and "keep [his] stuff [in the storage unit] from being taken." When questioned as to whether he had "confirm[ed] with [human resources] whether [he] would be paid out the PTO," Jones responded that there was no human resources representative located in his local office and that he had, instead, written to his supervisor for guidance on the matter and his supervisor told him the PTO would be paid upon leaving. Jones also argued that his part-time hours led to financial difficulties and that staying at the job "would have led to more hardship" for him in that regard.

¶8      The ALJ affirmed the decision denying Jones unemployment benefits. The ALJ stated that he "was not persuaded [Jones] was somehow better off financially by quitting his job and having no income rather than being able to work 20–25 hours a week" and that Jones could have remained at his job "until he secured other full-time work." The ALJ also addressed the equity and good conscience standard and determined that the denial of benefits was not "unreasonably harsh or an afront to fairness" because Jones "did not act reasonably by quitting his job," which "resulted in him having no income rather than having some income at 20–25 hours per week."

¶9      Jones then appealed the ALJ's decision to the Board. But the Board affirmed the ALJ's decision. The Board concluded that good cause was not established because Jones "failed to produce convincing evidence that remaining employed created a hardship outside of his control." After noting that neither the garnishment nor the storage unit issues were "attributable to the [e]mployer," the Board explained why the reduction in available work hours did not ultimately amount to good cause to quit: "[A] reasonable person would not have quit a job offering 20 to 24 hours per week

to guarantee they would receive zero hours of work. Rather, a reasonable person would have retained their part-time employment until they secured a job that offered more hours." As to the PTO issue, the Board determined that Jones "reasonably could have confirmed the payout policy with human resources before resigning his job." Additionally, the Board noted that, after he quit, Jones had been able to work out a payment plan with the storage unit company, and the Board reasoned that Jones "could have pursued this solution and retained his employment instead of quitting his job."

¶10 Regarding the equity and good conscience standard, the Board also agreed with the ALJ that the denial of benefits in this case was "not an affront to fairness." The Board determined that Jones's "decision to quit [his] part-time job because he had financial issues was not logical, sensible, or practical," and the Board reasoned that "[a]t the very least, [Jones] could have kept his employment and attempted to open an unemployment claim based upon his reduction in hours."

¶11 Jones now seeks judicial review by this court of the Board's decision denying unemployment benefits.

## ISSUES AND STANDARDS OF REVIEW

¶12 Jones contests the Board's determinations that he failed to show (1) good cause for quitting his job and (2) that it would be contrary to equity and good conscience to deny him unemployment benefits. *See generally* Utah Admin. Code R994-405-105 ("The claimant has the burden to establish that the elements of good cause or of equity and good conscience have been met."). Each of these determinations is a fact-like mixed question of law and fact, and we therefore apply a deferential standard of review to the Board's determinations. *See Sawyer v. Department of Workforce Services*, 2015 UT 33, ¶ 25, 345 P.3d 1253

(good cause); *Neckel v. Department of Workforce Services*, 2015 UT App 292, ¶ 14, 364 P.3d 65 (equity and good conscience). "Thus, we will uphold the Board's decision so long as it is within the realm of reasonableness and rationality." *EAGALA, Inc. v. Department of Workforce Services*, 2007 UT App 43, ¶ 9, 157 P.3d 334 (quotation simplified); *accord Smith v. Board of Review of Indus. Comm'n*, 714 P.2d 1154, 1155 (Utah 1986). "However, we must be vigilant in our review of mixed findings to ensure that they are based on correct legal principles. We review the legal standard applied to a particular mixed question for correctness." *Sawyer*, 2015 UT 33, ¶ 25 (quotation simplified).

## ANALYSIS

### I. Good Cause

¶13    Jones first argues that the Board erred in determining that he failed to show good cause for quitting his job. *See* Utah Code § 35A-4-405(1)(a) (stating that claimants are not eligible for unemployment benefits if they "left work voluntarily without good cause"). "To establish good cause, a claimant must show that continuing the employment would have caused an adverse effect which the claimant could not control or prevent" and "that an immediate severance of the employment relationship was necessary." Utah Admin. Code R994-405-102. Additionally, "[t]he separation must have been motivated by circumstances that made the continuance of the employment a hardship or matter of concern, sufficiently adverse to a reasonable person so as to outweigh the benefits of remaining employed." *Id.* R994-405-102(1)(a). Good cause to quit is evaluated by "the objective standard of whether a reasonably prudent person would be justified in quitting under similar circumstances." *Sawyer v. Department of Workforce Services*, 2015 UT 33, ¶ 30, 345 P.3d 1253 (quotation simplified). And good cause is not established if the claimant "reasonably could have continued working while

looking for other employment." Utah Admin. Code R994-405-102(1)(b)(i).

¶14 Jones asserts that the Board applied an "incorrect standard" in making its good cause determination when it reasoned that the garnishment of wages and the issues with the storage unit were not "attributable to the [e]mployer" and when it considered that Jones had later been successful in working out a payment plan with the storage unit company. Jones argues that the "adverse effect[]" caused by his continued employment was his "insufficient income due to reduced hours" and that his efforts to mitigate the damage caused by the adverse effect (either before or after he quit) do not indicate that he had the ability to "control or prevent" the adverse effect itself. *See id.* R944-405-102.

¶15 But even so, the relevant standard also states that "good cause will not be found" in situations where the claimant "reasonably could have continued working while looking for other employment," *id.* R944-405-102(1)(b), and the Board found that this was the case here. Specifically, the Board determined that when faced with insufficient hours and income, "a reasonable person would not have quit a job offering 20 to 24 hours per week to guarantee they would receive zero hours of work" but, instead, "would have retained their part-time employment until they secured a job that offered more hours." Further, a showing of good cause requires that "an immediate severance of the employment relationship was necessary," *id.* R994-405-102, and that the hardship created by continued employment "outweigh[ed] the benefits of remaining employed," *id.* R994-405-102(1)(a). But here, as the Board articulated, the financial hardship Jones was experiencing would not have been avoided or ameliorated by quitting his job and forgoing the benefits of having at least part-time employment; instead, such hardship would be exacerbated. Thus, Jones did not show that quitting his job was necessary or that the benefits of quitting would outweigh the benefits of part-time employment.

¶16     Jones pushes back, relying on what he understood to be the company's unused PTO policy and arguing that at the time of his departure from the company, he reasonably understood that he would receive a lump-sum payout if he quit and that this would have helped to alleviate his financial strain. But the Board was not convinced that quitting without further verification of a PTO payout was reasonable: "[Jones] reasonably could have confirmed the payout policy with human resources before resigning his job." Thus, where the Board essentially found that it was unreasonable for Jones to give up consistent part-time employment without first verifying that quitting would result in a lump-sum payment for his unused PTO, the Board appropriately did not credit Jones's unreasonable misunderstanding in its assessment of whether Jones reasonably could have continued working while looking for other employment.[1]

¶17     Finally, Jones argues that "the Board's good cause analysis was infirm because it failed to consider all the financial hardship evidence when reviewing the effects [he] was suffering from his employment." Specifically, Jones points to his assertions that he

---

1. Regarding the Board's apparent determination that Jones's reliance on a PTO payout was unreasonable, we note that there is substantial evidence in the record supporting such a finding, including information from a human resources representative that the updated PTO policy was found in the most recent employee handbook (issued in 2022) and that "[t]his was acknowledged electronically by all [employees] in 2022." *See generally* Utah Code § 63G-4-403(5)(g) (providing for relief where "the agency action is based upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court"); *Drake v. Industrial Comm'n*, 939 P.2d 177, 181 (Utah 1997) ("When reviewing the factual findings made by an administrative agency, an appellate court will generally reverse only if the findings are not supported by substantial evidence.").

was unhoused, that he was facing the possibility of losing all his belongings in storage, and that his income "was reduced by over 50%."[2] Yet Jones fails to explain how the severity of his condition would make it less reasonable for him to continue working while he sought full-time employment. Thus, we do not see that any failure of the Board to specifically articulate these facts indicates an infirmity in its good cause analysis.

¶18 Thus, while we are sympathetic to Jones's situation, we are not persuaded that the Board applied an incorrect standard in assessing whether Jones had established the elements of good cause. We therefore decline to disturb the Board's determination on this point.

## II. Equity and Good Conscience

¶19 Jones next challenges the Board's determination that he did not satisfy the equity and good conscience standard, which provides that "[a] claimant may not be denied eligibility for benefits if the claimant leaves work under circumstances where it would be contrary to equity and good conscience to impose a disqualification." Utah Code § 35A-4-405(1)(b).

¶20 To establish that denial of unemployment insurance benefits would be against equity and good conscience, claimants must demonstrate, among other things, that they acted reasonably in deciding to quit. *See* Utah Admin. Code R994-405-103(1)(a). "[A] claimant acted reasonably if the decision to quit was logical, sensible, or practical. There must be evidence of

---

2. The Board's findings indicate that Jones was able to work "at least full-time" while his coworker was on medical leave and that his hours were reduced to "20 to 24 hour per week" upon the coworker's return. Thus, the Board was cognizant of the significant reduction in hours and income that Jones experienced.

circumstances which, although not sufficiently compelling to establish good cause, would have motivated a reasonable person to take similar action . . . ." *Id.*; *accord Neckel v. Department of Workforce Services*, 2015 UT App 292, ¶ 15, 364 P.3d 65. On judicial review, however, this court "will not engage in a free-wheeling judicial foray into the record to impose a decision based on our collective sense of equity and fairness." *Neckel*, 2015 UT App 292, ¶ 15 (quotation simplified). Rather, our analysis of the fact-like issue before us "must reflect the broad discretion conferred by the legislature upon the [Board]." *Adams v. Board of Review of Indus. Comm'n*, 776 P.2d 639, 642 (Utah Ct. App. 1989).

¶21    Jones argues that the Board again applied the wrong legal standard—this time by assessing the reasonableness of his decision to quit with the benefit of hindsight instead of as of the time the decision was made. But, again, we do not agree. The Board did not base its decision on whether Jones was ultimately successful in obtaining a PTO payout but, rather, whether it was reasonable for Jones to quit without first verifying with human resources that he would receive such a payment. And after having previously determined that such action by Jones was not reasonable, the Board concluded that Jones's "decision to quit [his] part-time job because he had financial issues was not logical, sensible, or practical."

¶22    Jones additionally argues that the Board "failed to even engage with the facts," specifically the facts that he "was unhoused and facing the loss of his property" and that he made a "reasonable assumption" that he would receive the PTO payout. But the Board discussed the fact that Jones was "facing financial issues," and it had earlier recognized that he "had trouble paying for his storage unit." And the Board had also already considered the PTO issue. Thus, we are not convinced that the Board ignored or failed to engage with those facts in arriving at its determination that, under these circumstances, Jones "did not act reasonably by quitting his job" and stating that "[a]t the very least, he could have

kept his employment and attempted to open an unemployment claim based upon his reduction in hours."

¶23 Thus, we do not agree that the Board applied the wrong legal standard or failed to engage with the facts in making its determination that Jones had not shown that he qualified for benefits under the equity and good conscience standard.[3]

CONCLUSION

¶24 Jones's various claims of legal error fail, and we therefore decline to disturb the Board's decision denying unemployment benefits.

———————

3. Jones primarily argues that the Board applied certain incorrect legal standards. And to the extent that any portions of his arguments were also intended to challenge the Board's ultimate determinations as to good cause and the equity and good conscience standard, they are also unavailing. As stated above, we are required to defer to the Board's determinations regarding both good cause and the equity and good conscience standard, and under this deferential standard of review, we do not substitute our judgment for that of the Board. *See supra* ¶ 12. Accordingly, based on the record in this case, the Board did not exceed its discretion in its conclusion on either issue; that is, the Board's conclusions were "within the realm of reasonableness and rationality." *EAGALA, Inc. v. Department of Workforce Services*, 2007 UT App 43, ¶ 9, 157 P.3d 334 (quotation simplified).