2011 UT App 68

**Jeremy C. SMITH, Petitioner,**

v.

**WORKFORCE APPEALS BOARD, DEPARTMENT OF WORKFORCE SERVICES; and Alpine School District, Respondents.**

No. 20100407–CA.

Court of Appeals of Utah.

March 10, 2011.

Christopher D. Greenwood, Provo, for Petitioner.

Suzan Pixton, Salt Lake City, for Respondent Workforce Appeals Board, Department of Workforce Services.

Before Judges McHUGH, ORME, and VOROS.

OPINION

McHUGH, Associate Presiding Judge:

¶ 1 Jeremy C. Smith seeks judicial review of a decision of the Workforce Appeals Board

(the Board) denying his application for unemployment insurance benefits. We uphold the Board's decision.

BACKGROUND

¶ 2 From October 31, 2000, until his termination on November 17, 2009, Smith worked as an electrician specialist for the Alpine School District (the District). Because Smith had work-related duties at each of the multiple school locations throughout the District, he drove a District-owned vehicle every workday. On October 12, 2007, Smith hit a parked car while driving a non–District vehicle; he was under the influence of a prescription medication at the time.[1] The police officer at the scene arrested Smith. After submitting to a blood test, Smith was taken to jail where his driver license was confiscated. Upon his release, Smith was arraigned on charges of driving under the influence (DUI) and entered a plea of not guilty. A minute entry from the court proceedings indicates that the trial court warned Smith not to drive without a valid license and insurance. The police did not return Smith's driver license upon his release from jail, instead providing him with "paperwork" that Smith believed was the "same thing as a drivers license" (the Paperwork). Although Smith claimed to be unaware of the fact, his driver license was suspended effective November 11, 2007, when the Paperwork expired. Smith did not report the DUI arrest to the District and continued to drive District vehicles every workday. On February 4, 2008, Smith pleaded no contest to a charge of drug-related reckless driving and was informed by the court that he could contact the Driver License Division to obtain a license. Smith's driving privileges were reinstated by the Driver License Division on February 12, 2008.

¶ 3 In July 2009, a legislative audit of the District revealed Smith's no-contest plea to the drug-related reckless driving offense. Based upon this information, the District asked Smith if he had ever driven on a suspended license. When he admitted that he had, the District terminated Smith for

1. Smith was aware that he was not to operate a motor vehicle after taking the medication.

dishonesty on the job and for committing a criminal act. Smith applied for unemployment benefits, which the Department of Workforce Services (the Department) awarded based on its determination that the District did not have "just cause" to terminate Smith. *See* Utah Code Ann. § 35A–4–405(2)(a) (Supp.2010).[2]

¶4 The District appealed the decision to an Administrative Law Judge (the ALJ), arguing that Smith was terminated for just cause because he knowingly drove District vehicles on a suspended license and did not report the suspension to the District. In response, Smith argued that he first learned that his license had been suspended when it was reinstated and, therefore, did not have knowledge that he was driving District vehicles without a valid license. The District's Human Resources Director (the HR Director) testified at the hearing before the ALJ and described a meeting he had with Smith on October 6, 2009, after learning of the matter from the legislative auditor. According to the HR Director, Smith admitted that he pleaded no contest to drug-related reckless driving, that his license had been suspended, and that he had "driven on a suspended license for [the District] during that time." The HR Director also testified that Smith indicated that he did not report the incident to the District because Smith felt like "he could basically just get away with it and no one would know the difference." In an email dated December 14, 2009, which was entered into evidence without discussion or objection, the HR Director reported that Smith also stated that he had missed the "two week deadline to contest losing his license and that it was suspended for a year."[3]

¶5 During cross-examination by Smith's counsel, the HR Director was asked about another email that had also been admitted into evidence without objection. That email was to the HR Director from Smith's union representative, who had been present during portions of the October 6, 2009, meeting with Smith. It states,

> [Smith] said that he had been in an accident and was given paperwork at the scene. After he had time to review the paperwork, he realized he had missed a deadline which was crucial to maintaining his drivers license. Upon missing the deadline, his license was suspended and would continue to be suspended for one year. At this time he felt it was in his best interest to remain quiet about the loss of the drivers license. Chances were good that no one would know and when the license was reinstated, it would be behind him. He was very forthcoming and acknowledged he had [driven] on a suspended license for the full year.

¶6 Smith also testified, admitting that he had been arrested for DUI, taken into custody, and confined to jail. Smith stated that the police confiscated his permanent license and replaced it with the Paperwork. Although he admitted to reading it, Smith could not recall if the Paperwork indicated that it would expire in twenty-nine days. Smith claimed that he first learned that his license had been suspended when he appeared at his last court date on February 4, 2008, and the trial court informed him that he could apply to have his driving privileges reinstated. Because he had a valid license again by the time he learned that it had been suspended, Smith testified that he did not "think it was important" to notify the District of the prior suspension.

¶7 After the hearing, the ALJ reversed the Department's decision awarding Smith unemployment benefits, finding that Smith's claim of ignorance about the suspension of his driver license was "not credible." Smith appealed the ALJ's decision to the Board, which affirmed the denial of benefits. The Board's decision indicates that "[f]rom the evidence the Board was able to obtain, peace officers from all jurisdictions in Utah use the

---

**2.** Because the relevant provisions of the Utah Code have not changed, we cite to the current version as a convenience to the reader.

**3.** Smith testified at the hearing that it was a "misunderstanding" when he told the HR Director that his license was suspended for a year

and suggested that he was trying to explain a one-year alcohol restriction that was placed on his license when it was reinstated. Smith acknowledged, however, that his license was actually suspended for approximately three months.

same 'paperwork' or citation for the '29 day' license. A blank copy of that citation is attached to this decision." Nowhere in the decision does the Board identify the source of the DUI form or the basis of the Board's assertion that its use "appears to be uniform throughout Utah."[4] Based on the language of the DUI form, including the capitalized notice at the top of the document warning that the recipient's driver license will be denied, revoked, suspended, or disqualified within thirty days, the Board determined that: "There is no way to read this citation and not know that your drivers license was or would be suspended or revoked immediately or within 30 days." Noting that Smith did not introduce a copy of the Paperwork he actually received, the Board found that it was identical to the DUI form, and that Smith "knew, or should have known by reading his 'paperwork' that his license was suspended." Therefore, the Board concluded that the District had just cause to fire Smith. In its decision, however, the Board notified Smith that if he "received a different type of 'paperwork,' he [could] file a motion for reconsideration and include verifiable evidence of the 'paperwork' he received."[5] Smith did not request reconsideration and, instead, filed a timely appeal of the Board's decision.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 Smith first contends that by considering the DUI form and the testimony concerning its use after the hearing, the Board engaged in an unlawful decision-making process, and violated and misapplied Department rules. Smith is entitled to relief based upon the agency's "unlawful procedure or decision-making process," Utah Code Ann.

§ 63G–4–403(4)(e) (2008), only if he was "substantially prejudiced" as a result, *id.* § 63G–4–403(4). The standard for determining whether a claimant in an agency proceeding has been substantially prejudiced is the same as the standard used for deciding whether an error in a judicial proceeding is harmless. *See Morton Int'l, Inc. v. Utah State Tax Comm'n,* 814 P.2d 581, 584 (Utah 1991), *superseded by statute on other grounds,* Utah Code Ann. § 59–1–610(1)(b) (Supp.1993), *as recognized in 49th St. Galleria v. Tax Comm'n,* 860 P.2d 996, 999 (Utah Ct.App.1993). "[A]n error will be harmless if it is sufficiently inconsequential that there is no reasonable likelihood that the error affected the outcome of the proceedings." *Id.* (internal quotation marks omitted). Although an appellate court will give an agency some deference in the interpretation and application of its own rules and procedures, *see Resort Retainers v. Labor Comm'n,* 2010 UT App 229, ¶ 11, 238 P.3d 1081, we will "defer[ ] to an agency's interpretation" only if it "is both reasonable and rational," *Barnard & Burk Grp., Inc. v. Labor Comm'n,* 2005 UT App 401, ¶ 9, 122 P.3d 700.

¶ 9 Smith also asserts that the Board abused its discretion by basing its decision on findings of fact that are not adequately supported by the evidence. "An administrative agency's findings of fact will be reversed 'only if the findings are not supported by substantial evidence.'" *Smith v. Department of Workforce Servs.,* 2010 UT App 382, ¶ 6, 245 P.3d 758 (quoting *Drake v. Industrial Comm'n,* 939 P.2d 177, 181 (Utah 1997)); *see also* Utah Code Ann. § 35A–4–508(8)(e) (2005) ("In any judicial proceeding under this section, the findings of the Work-

---

4. Counsel for the Board attempts to provide that information to this court in her brief, indicating that unidentified individuals at unidentified law enforcement agencies indicated that the DUI form is used throughout the State. However, our review is limited to the record evidence, *see* Utah Code Ann. § 63G–4–403(4) (2008) (noting that the appellate court shall make determinations "on the basis of the agency's record"), and we do not consider these assertions of counsel as part of that record, *see generally State v. Leber,* 2009 UT 59, ¶ 16, 216 P.3d 964 (noting that statements of counsel are not evidence). Likewise, counsel's representations about the deliberative process of the Board are neither public

information nor part of the record on appeal, and we do not consider them. *Cf. Dairy Prod. Servs., Inc. v. City of Wellsville,* 2000 UT 81, ¶ 60, 13 P.3d 581 (recognizing the importance of allowing those charged with the decision-making or judicial phase of a decision to "have the opportunity of discussing and thinking about the matter in private").

5. Smith testified at the hearing before the ALJ that he was unsure about what information was contained in the Paperwork because he did not have it with him and it had been "awhile."

force Appeals Board as to the facts, if supported by the evidence, are conclusive and the jurisdiction of the court is confined to questions of law."). "Substantial evidence is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Caster v. West Valley City*, 2001 UT App 212, ¶ 4, 29 P.3d 22. Furthermore, whether an employer has just cause to terminate an employee is a mixed question of law and fact. *See EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 9, 157 P.3d 334. "Because proper application of the Employment Security Act and the relevant rules requires little highly specialized or technical knowledge," we grant "moderate deference" to the Board's decision and will uphold it "so long as it is within the realm of reasonableness and rationality." *Autoliv ASP, Inc. v. Department of Workforce Servs.*, 2001 UT App 198, ¶ 16, 29 P.3d 7 (internal quotation marks omitted).[6]

## ANALYSIS

I. We Assume, Without Deciding, that the Board Engaged in an Unlawful Procedure or Decision–Making Process, or Has Failed To Follow Prescribed Procedure.

■ ¶ 10 Smith claims that the Board's reliance on the DUI form and on unidentified evidence concerning its statewide use was both unlawful and contrary to prescribed procedure. For purposes of our analysis we assume, without deciding, that Smith is correct. *See* Utah Code Ann. § 35A–1–301(3)(a)–(b) (Supp.2010) (requiring that "a full and complete record of all adjudicative proceedings in connection with a disputed matter" be kept, and that "[a]ll testimony at any hearing shall be recorded"); Utah Code Ann. § 63G–4–206(1)(b)(iv) (providing that a presiding officer "may take official notice of any facts that could be judicially noticed under the Utah Rules of Evidence, of the record of other proceedings before the agen-

cy, and of technical or scientific facts within the agency's specialized knowledge"); *In re C.Y. v. Yates*, 765 P.2d 251, 254 (Utah Ct. App.1988) (concluding that it was a denial of due process to judicially notice facts "without giving full notice to the parties and without giving them an opportunity to explain or rebut" those facts and cautioning that "courts should not take judicial notice of relevant evidence after the record to the proceeding before the court is closed" (internal quotation marks omitted)); Utah Admin. Code R994–508–109 (providing that testimony during hearings shall be "given under oath"); Utah Admin. Code R994–508–305(2)–(3) (providing that the Board "will not consider new evidence on appeal if the evidence was reasonably available and accessible at the time of the hearing before the ALJ" unless there is "a showing of unusual or extraordinary circumstances," and that the Board has "the authority to *request* additional information or evidence, if necessary" (emphasis added)); *see also Grace Drilling Co. v. Board of Review*, 776 P.2d 63, 70 (Utah Ct.App.1989) ("Elementary fairness in unemployment compensation adjudications includes a party's right to see adverse evidence and be afforded an opportunity to rebut such evidence."); *cf. Tintic Standard Mining Co. v. Industrial Comm'n*, 100 Utah 96, 110 P.2d 367, 369 (1941) ("[T]he commission should not receive evidence on disputed matters where a hearing is held after the hearing is closed, since then a party adversely affected would have no opportunity to meet such evidence...."); *Spencer v. Industrial Comm'n*, 81 Utah 511, 20 P.2d 618, 620 (1933) (noting that although "the Industrial Commission is not a court and is not bound by the usual common law or statutory rules ... of procedure ..., any party to a cause or proceeding is entitled to be advised of and afforded an opportunity to meet such evidence as the commission may consider and rely on in the making of its findings and decision" (citation omitted)). Notwithstanding that assumption, we conclude that Smith is not entitled to relief

---

6. Smith also argues that the Board exceeded its authority by interpreting the Uniform Driver License Act. Although agencies may construe statutory language, they are accorded no deference when interpreting a "non-agency specific legisla-

tive act." *Lorenzo v. Workforce Appeals Bd.*, 2002 UT App 371, ¶ 7, 58 P.3d 873. Because our decision is not dependent upon an interpretation of the Uniform Driver License Act, we do not consider this issue further.

because he has not demonstrated that he has been substantially prejudiced. *See* Utah Code Ann. § 63G–4–403(4)(e).

II. Smith Has Not Demonstrated Prejudice Because The Record Contains Substantial Evidence To Support the Board's Finding that He Knew that His License Was Suspended when He Drove District Vehicles.

¶ 11 An employee is not eligible for unemployment benefits if the employee has been terminated for "just cause." *See* Utah Code Ann. § 35A–4–405(2)(a). The employer "has the burden to prove there was just cause for discharging the claimant," Utah Admin. Code R994–405–203, which is established if three elements are met: culpability, knowledge of expected conduct, and control over the offending conduct, *see id.* R994–405–202; *EAGALA,* 2007 UT App 43, ¶ 20, 157 P.3d 334; *Autoliv,* 2001 UT App 198, ¶ 17, 29 P.3d 7; *White v. Board of Review of Indus. Comm'n,* 778 P.2d 21, 23 (Utah Ct.App.1989). Here, Smith challenges only the element of knowledge.

¶ 12 An employee's knowledge of the expected conduct can be proven by a specific employer policy proscribing the conduct or where the conduct violates a universal standard of conduct. *See* Utah Admin. Code R994–405–202(2). The District acknowledges that it had no specific policy applicable to these circumstances during the relevant time. However, the District asserts and Smith concedes that knowingly driving District vehicles on a suspended license would violate a universal standard of conduct. Notwithstanding that concession, Smith contends that the record does not contain substantial evidence to support the Board's finding that he knew that his license had been suspended when he drove District vehicles. *See Albertsons, Inc. v. Department of Emp't Sec.,* 854 P.2d 570, 574 (Utah Ct.App.1993) (holding that accidents or " 'good-faith errors in judgment' " generally " 'do not constitute culpable conduct which preclude[ ] a discharged employee from receiving unemployment compensation benefits' " (quoting *Gibson v. Department of Emp't Sec.,* 840 P.2d 780, 783 (Utah Ct.App.1992))); *see also Lane v. Board of Review of Indus. Comm'n,* 727 P.2d 206, 211 (Utah 1986) (concluding that an employee was not discharged for just cause where "the uncontradicted evidence [was] that [the employee's] failure to check the age of the person to whom he sold ... beer was a mistake in judgment and not an intentional or knowing disregard of his employer's policy").

¶ 13 In deciding whether Smith is correct, we consider only the record evidence to determine if there is substantial evidence to support the Board's finding that Smith was aware that he did not have a valid driver license when he drove District vehicles. *Cf. Spencer,* 20 P.2d at 620 ("Unless ... evidence ... is made part of the record, it cannot be regarded as competent evidence, and must be excluded in determining the sufficiency of the evidence to support the findings of the Industrial Commission."). Because we conclude that "a reasonable mind might accept" the whole body of *record* evidence "as adequate to support a conclusion" that Smith knew of the suspension, we agree with the Board that Smith was not substantially prejudiced by the Board's consideration of *non-record* evidence. *See EAGALA,* 2007 UT App 43, ¶ 8, 157 P.3d 334 (internal quotation marks omitted).

¶ 14 In support of his position that the record evidence is inadequate, Smith points to his own testimony that he did not remember if the Paperwork had an expiration date and that no one informed him that his driving privileges were subject to suspension. Smith argues that because "[n]o police officer or driver license division representative testified," there was "no conflicting evidence from which the Board could make an inference" that Smith had knowledge of his license suspension. In contrast, relying only on the record evidence, the ALJ concluded that the confiscation of Smith's license and the issuance of the Paperwork in its place were sufficient to alert Smith that there was, or might be, a change in the status of his driving privileges. We agree that the circumstances described by Smith were sufficient to support a finding that he knew of the suspension.

¶ 15 Indeed, the administrative rule promulgated with respect to ineligibility for un-

employment benefits discusses the type of knowledge at issue in this case. Rule R994–405–208 includes specific examples of reasons for discharge, together with a discussion of whether there is just cause for termination. *See* Utah Admin. Code R994–405–208. One of the reasons for discharge discussed is "Loss of License," which states,

> If the discharge is due to the loss of a required license and the claimant had control over the circumstances that resulted in the loss, the conduct is generally disqualifying.... *In the example of a lost driving privilege due to driving under the influence (DUI), knowledge is established as it is understood by members of the driving public that driving under the influence of alcohol is a violation of the law and may be punishable by the loss of driving privileges.*

*Id.* R994–405–208(5) (emphasis added). We agree that a finding of knowledge is appropriate here, as provided by the administrative rule.

¶ 16 Even if the general understanding about the consequences of DUI were not sufficient to support the Board's finding that Smith knew about the suspension of his driving privileges, other evidence in the record establishes that fact. Smith testified to significant interaction with law enforcement, court personnel, a judge, and a defense lawyer after being arrested for DUI. He also admitted to reading the Paperwork he received upon surrendering his permanent license. The ALJ was free to reject as implausible Smith's claims that none of the individuals he encountered in the DUI process, nor the Paperwork itself, informed Smith of the suspension. *Cf. Baker v. Department of Emp't Sec.,* 564 P.2d 1126, 1127 (Utah 1977) (concluding that the commission "was not obliged to believe the testimony of" self-interested witnesses where the "plausibility and veracity" of their explanations

seemed unlikely). *But cf. Spencer v. Industrial Comm'n,* 81 Utah 511, 20 P.2d 618, 622 (1933) (rejecting the industrial commission's argument that the finding that the claimant was not credible was sufficient to support its decision denying benefits, because the commission's assessment of credibility was influenced by its reliance on non-record evidence).[7]

¶ 17 In addition, the record contains the testimony from the HR Director, a minute entry reflecting a judicial admonition that Smith not drive without a valid license, and the two emails about the meeting with Smith following the discovery of his DUI arrest. The email from the HR Director indicates that Smith admitted to "miss[ing] a two week deadline to contest losing his license," while the union representative's email states that upon "miss[ing] a deadline which was crucial to maintaining his drivers license," Smith "felt it was in his best interest to remain quiet about the loss of the drivers license. Chances were good that no one would know and when the license was reinstated, it would be behind him."[8] Smith contends that the emails, as well as the HR Director's testimony, are inadmissable hearsay. Because Smith further asserts that no admissible evidence supports the Board's finding, he argues that the emails cannot be considered in our review of whether the Board's finding that he knew about the suspension is supported by substantial evidence.

¶ 18 While inadmissable hearsay may be considered by both the ALJ and the Board, *see* Utah Admin. Code R994–508–111(3), "findings of fact cannot be based exclusively on inadmissable hearsay evidence," *Prosper, Inc. v. Department of Workforce Servs.,* 2007 UT App 281, ¶ 11, 168 P.3d 344 (internal quotation marks omitted); *see also* Utah Admin. Code R994–508–111(4). Instead, a factual finding must be supported by a "residu-

---

7. Unlike in *Spencer v. Industrial Commission,* 81 Utah 511, 20 P.2d 618 (1933), here, the determination that Smith was not credible was made by the ALJ in the absence of any of the challenged non-record evidence.

8. Smith argues that the statement to his union representative would qualify as a privileged communication under rule 504(b) of the Utah Rules

of Evidence. However, because Smith did not object to the admission of the emails during the hearing before the ALJ, he has waived any privilege. *See generally State v. Anderson,* 972 P.2d 86, 89 (Utah Ct.App.1998) (concluding that defendant waived doctor-patient privilege by not objecting to physicians' testimony at preliminary hearing).

um of legal evidence competent in a court of law." *Prosper*, 2007 UT App 281, ¶ 10, 168 P.3d 344. The ALJ concluded that Smith was not credible when he testified that he did not know of the suspension until his license was reinstated. In many instances, a conclusion that a claimant's testimony is not credible on some point will not support a finding that the employer's version of events is true. In this case, however, there are only two possibilities: either Smith knew or he did not know. Thus, a finding that Smith was not believable when he testified that he did not know about the suspension necessarily supports a finding that he did know. Additionally, Smith's own testimony, including his description of the events surrounding his arrest, created an inference that he knew that his driving privileges had been suspended. That inference was reinforced by the minute entry, which clearly indicated that the trial court warned Smith not to drive unless he had a valid license. Smith's testimony, together with the minute entry, provides a residuum of competent evidence that supports the Board's finding. *See id.* Therefore, even if the emails and the HR Director's testimony are hearsay that would not be "competent in a court of law," *see id.*, we may consider them in determining whether substantial evidence supports the Board's factual finding that Smith had knowledge of his license suspension at the time he drove District vehicles. *See* Utah Admin. Code R994–508–111(4); *see also EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 8, 157 P.3d 334 (holding that a finding of fact is supported by sufficient evidence if the whole body of record evidence would be adequate to satisfy a reasonable mind of the conclusion).

¶ 19 The HR Director's testimony describing the meeting with Smith is notable for the absence of any claim by Smith that he was unaware of the suspension. Similarly, the union representative's email corroborates the HR Director's account and states expressly that Smith made the decision to remain quiet about the loss of his driving privileges because "[c]hances were good that no one would know and when the license was reinstated, it would be behind him." While Smith's version of the meeting varies greatly from the HR Director's, the Board was free to find the Director's testimony more credible. The emails bolster the HR Director's testimony and provide more evidence that Smith knew about the suspension, but drove District vehicles anyway. Because the finding of the Board that Smith drove District vehicles with knowledge that his license had been suspended is supported by substantial record evidence, Smith was not prejudiced by the Board's consideration of the DUI form and the unidentified information about its statewide use.

## CONCLUSION

¶ 20 Even assuming the post-hearing consideration of the DUI form and unidentified information concerning its use was improper, the Board's determination that Smith had knowledge of his license suspension was supported by substantial record evidence. Therefore, Smith was not prejudiced by any assumed error, and we decline to disturb the Board's decision.

¶ 21 WE CONCUR: GREGORY K. ORME AND J. FREDERIC VOROS JR., Judges.