IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Carbon County, | ) | MEMORANDUM DECISION |
| | ) | |
| Petitioner, | ) | Case No. 20110109-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Department of Workforce Services, | ) | (January 6, 2012) |
| Workforce Appeals Board; and Wade L. | ) | |
| Marinoni, | ) | 2012 UT App 4 |
| | ) | |
| Respondents. | ) | |

-----

Original Proceeding in this Court

Attorneys:     D. Scott Crook, Salt Lake City, for Petitioner
                    Suzan Pixton, Salt Lake City, for Respondent Department of Workforce
                    Services
                    Blake A. Nakamura, Salt Lake City, for Respondent Wade L. Marinoni

-----

Before Judges Voros, Davis, and Christiansen.

CHRISTIANSEN, Judge:

¶1     Carbon County seeks review of the Workforce Appeals Board's (the Board)
decision awarding unemployment insurance benefits to a former county employee,
Wade L. Marinoni.  We affirm.

¶2     The Board's factual findings establish that Marinoni had been employed by Carbon County as an emergency medical technician (EMT) for eighteen years. In August 2010, Marinoni transported a patient complaining of chest pains to Castleview Hospital. Later that same day, he received a call from Nurse Lex Black (the nurse) at Castleview Hospital requesting a STAT transport for the same patient to the Utah Valley Regional Medical Center in Provo. After discussing the requested transport with the nurse, Marinoni "did not believe this was an emergency situation." Instead of personally responding immediately to the hospital, Marinoni called two other on-call employees to take the transport. Thereafter, Carbon County terminated Marinoni "for not taking the call himself and thereby causing a delay in the ambulance reaching the hospital." At the time of Marinoni's termination, Carbon County did not have a written policy on handling such STAT calls and had not had formal training for some time.

¶3     The Board determined that Carbon County had not carried its burden to prove just cause for Marinoni's termination because it failed to prove that his conduct was culpable, that he acted with knowledge of Carbon County's expectations, and that he was in control of the conduct that led to his termination. Therefore, the Board concluded that Marinoni was entitled to unemployment benefits. Carbon County appeals, challenging the Board's factual findings and legal determinations and arguing that it established that it justly terminated Marinoni, rendering him ineligible for unemployment benefits.

¶4     An individual is not eligible to receive unemployment benefits if discharged from his or her employment for "just cause." *See* Utah Code Ann. § 35A-4-405(2)(a) (Supp. 2011); Utah Admin. Code R994-405-201. "[N]ot every legitimate cause for discharge justifies a denial of benefits." Utah Admin. Code R994-405-201. To establish that Marinoni was justly terminated from his employment, Carbon County had to prove that Marinoni's conduct in not responding immediately and personally to the requested transport involved each of the following elements: (1) culpability, (2) knowledge, and (3) control. *See id.* R994-405-202 (listing the elements required to prove just cause); *id.* R994-405-203 (establishing that the employer carries the burden to prove just cause); *see also Autoliv ASP, Inc. v. Department of Workforce Servs.*, 2001 UT App 198, ¶ 17, 29 P.3d 7.

## I. Carbon County Failed to Marshal the Evidence to Support the Factual Findings It Challenges on Appeal.

¶5     On appeal, Carbon County challenges some of the Board's factual findings, but it has not properly marshaled the evidence that supports the challenged findings.[1] *See* Utah R. App. P. 24(a)(9); *Bhatia v. Department of Emp't Sec.*, 834 P.2d 574, 579 (Utah Ct. App. 1992) (stating that a party challenging an agency's findings must "properly present the record, by marshaling all of the evidence supporting the findings and showing that, despite that evidence and all reasonable inferences that can be drawn therefrom, the findings are not supported by substantial evidence" (internal quotation marks omitted)). Instead, Carbon County reargues the facts that support its version of the events and challenges the credibility determinations made by the administrative law judge (ALJ) and the Board. *See generally Friends of Maple Mountain, Inc. v. Mapleton City*, 2010 UT 11, ¶ 12, 228 P.3d 1238 ("[A] recital of the challenged findings with an attempt to reargue the facts [does not fulfill the marshaling requirement]. This court does not retry the facts, it reviews them for clear error. Therefore, appellants must first present the evidence in a light most favorable to the trial court and not attempt to construe the evidence in a light favorable to their case. Then, appellants must explain why those findings contradict the clear weight of the evidence." (citations and internal quotation marks omitted)); *Chen v. Stewart*, 2004 UT 82, ¶ 78, 100 P.3d 1177 ("Appellants cannot merely present carefully selected facts and excerpts from the record in support of their position [when marshaling the evidence]. Nor can they simply restate or review evidence that points to an alternate finding or a finding contrary to the trial court's finding of fact." (citations omitted)); *Bhatia*, 834 P.2d at 579 (determining that the agency's findings were improperly marshaled when the party challenging the findings "emphasiz[ed] the evidence that supported his position, and left it to the court to sort out what evidence actually supported the findings" (internal quotation marks omitted)).

---

1. Specifically, Carbon County challenges the administrative law judge and Board's findings that if Marinoni "had considered the call to be urgent and needing an ambulance STAT, he and the other employee on duty, as the first response team, would have done the transport"; that Carbon County had not conducted "consistent training" on responding to a STAT transport and "ha[d] failed to show any consistent understanding of its transport policy prior to [Marinoni's] separation"; and that Marinoni's testimony regarding his understanding of the policy was credible.

¶6     Because Carbon County failed to properly marshal, we normally would not review the whole record to determine if the Board's factual findings are supported by substantial evidence. Instead, we would simply accept "the Board's findings as conclusive" and assume that the evidence supports the Board's factual findings. *See Bhatia*, 834 P.2d at 579. However, because the dissent has addressed the merits of Carbon County's argument, we must review the whole record.

## II. The Board Made No Findings that Marinoni Knew the Patient Was Having an Active Heart Attack.

¶7     Carbon County argues that it established both culpability[2] and knowledge[3] to justify Marinoni's termination because he knew that the patient needing to be transported was having an active heart attack and knew that delaying medical treatment could cause substantial harm to the patient. However, Carbon County's reliance on these facts is misplaced. Carbon County has not indicated where the Board made these critical factual findings. Furthermore, Carbon County did not object to the lack of such findings in the Board's decision. *See In re K.F.*, 2009 UT 4, ¶¶ 61-63, 201 P.3d 985 (requiring a party challenging the adequacy of the findings on appeal to preserve the issue in the trial court by bringing the lack of findings to the trial court's attention and stating that it is "wholly necessary for a party to challenge and thus afford the trial court an opportunity to correct the alleged error of inadequately detailed findings in order to provide for meaningful appellate review of the court's decision" (internal quotation marks omitted)). *See generally Olsen v. Labor Comm'n*, 2011 UT App 70, ¶ 26, 249 P.3d 586 (applying *In re K.F.*'s general preservation principles to an appeal from an agency's delayed decision).

---

2. As to the culpability element of just cause, Carbon County argues that Marinoni's volitional conduct of not responding immediately to a call to transport a patient having an active heart attack was "'so serious that continuing the employment relationship would jeopardize' [Carbon County's] rightful interest." (Quoting Utah Admin. Code R994-405-202(1).)

3. As to the knowledge element, Carbon County argues that Marinoni's delay in responding to the request to transport a patient experiencing an active heart attack violated a universal standard of conduct.

¶8    Although the Board did not definitively determine whether Marinoni knew the patient needing to be transported was having an active heart attack, the Board did find that Marinoni "provided credible testimony" that he did not consider it an emergency situation, did not consider the nurse's call to be urgent, and did not consider the nurse's request to be for a STAT transport. Carbon County essentially challenges these factual determinations by the Board. In doing so, Carbon County does not properly marshal the evidence that supports the Board's findings but instead points only to the evidence that supports its contrary position. *See Bhatia*, 834 P.2d at 579.

¶9    Even if Carbon County had marshaled the evidence, in seeking to overturn the Board's factual findings, Carbon County bears a heavy burden. "[T]his court grants great deference to an agency's findings, and will uphold the agency action if the findings are 'supported by substantial evidence when viewed in light of the whole record before the court.'" *Department of Air Force v. Swider*, 824 P.2d 448, 451 (Utah Ct. App. 1991) (quoting Utah Code Ann. § 63-46b-16(4)(g) (1989) (current version at Utah Code Ann. § 63G-4-403(1), (4)(g) (2008) (granting this court jurisdiction and the authority to grant relief if "the agency action is based upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court"))). "Substantial evidence is more than a mere scintilla of evidence . . . though something less than the weight of the evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grace Drilling Co. v. Board of Review*, 776 P.2d 63, 68 (Utah Ct. App. 1989) (omission in original) (citations and internal quotation marks omitted). "In applying the substantial evidence test, we review the 'whole record' before the court, and consider both evidence that supports the Board's findings and evidence that fairly detracts from them." *Swider*, 824 P.2d at 451. In reviewing the facts, this court has stated,

> It is not this court's place to "substitute its judgment as between two reasonably conflicting views, even though we may have come to a different conclusion had the case come before us for de novo review." Similarly, "[i]t is the province of the Board, not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the Board to draw the inferences."

*EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 16, 157 P.3d 334 (alteration in original) (quoting *Grace Drilling Co.*, 776 P.2d at 68).

¶10     Initially, Marinoni's testimony before the ALJ acknowledged the veracity of a written statement from the nurse requesting the STAT transport[4] and acknowledged that the nurse's statement indicated that the nurse told Marinoni that "[t]he patient was having an active MI with ongoing chest pain."[5]  In

---

4. The nurse's statements concerning the transport request were introduced at the hearing through a letter he had written after the incident.  The nurse did not testify at the hearing.

5. The dissent classifies the nurse's statement as "undisputed" and the request as "clear."  *See infra* ¶ 21.  However, although Marinoni did not dispute *what* the nurse said in his written statement, Marinoni's testimony about what those statements meant to him, which testimony the Board found credible, clearly disputed the meaning of the nurse's statements.  Making factual determinations based on the weight given to the conflicting testimony is clearly the responsibility of the ALJ and the Board, as this court does not make credibility determinations or reweigh conflicting evidence.  *See EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 16, 157 P.3d 334.  Instead, we simply look to the evidence and determine whether "a reasonable mind might accept [the evidence] as adequate to support a conclusion."  *Grace Drilling Co. v. Board of Review*, 776 P.2d 63, 68 (Utah Ct. App. 1989) (internal quotation marks omitted).
     Similarly, the dissent's reliance on Marinoni's alleged unprofessional driving during the transport as support that he was justly terminated is misplaced.  *See infra* ¶¶ 22, 30.  Both the ALJ and the Board determined that Carbon County terminated Marinoni for his improper response to the nurse's request for a transport and not for his improper driving during the transport.  Though the alleged poor driving was not the basis for his termination, Carbon County offered evidence and the Board found that "[d]uring the drive another employee complained that [Marinoni] was driving too fast so he slowed down."  Importantly, Carbon County does not challenge this particular finding on appeal.  Thus, we should not delve into the record to determine whether the finding was supported by sufficient evidence.  *See Department of Air Force v. Swider*, 824 P.2d 448, 451 (Utah Ct. App. 1991).  Additionally, Carbon County did not object to the Board's lack of consideration of Marinoni's driving as a reason to justify termination or to the adequacy of the findings.  *See generally In re K.F.*, 2009 UT 4, ¶¶ 61-63, 201 P.3d 985.  Furthermore, the specific statements made by other EMTs regarding Marinoni's

(continued...)

testifying about these statements, Marinoni stated that he received "[a] lot of transports" from Castleview Hospital that involved "routine chest pain." He also testified that he did not consider the call urgent because the nurse did not convey any urgency in his voice or demeanor in requesting the transport. Instead, the nurse simply responded "OK" when Marinoni said that he would "work on finding someone" to transport the patient. Given Marinoni's testimony, "relevant evidence [that] a reasonable mind might accept as adequate" exists to support the Board's factual findings that Marinoni did not consider the nurse's request to be urgent or require a STAT transport. *See Grace Drilling Co.*, 776 P.2d at 68.

¶11   Importantly, because Carbon County had not given Marinoni clear direction about how to respond when a nurse made a STAT transport request, both the ALJ and

---

5. (...continued)
driving are not only absent from the Board's findings but also are not argued in Carbon County's brief. *Cf. Ball v. Public Serv. Comm'n (In re Questar Gas Co.)*, 2007 UT 79, ¶ 40, 175 P.3d 545 ("[W]e have long held that it is improper to 'mak[e] blanket assertions and leav[e] the responsibility to the court to ferret out evidence from the record to support [them].'" (second, third, and fourth alterations in original) (citation omitted)). Thus, searching the record for facts that the Board did not find and the parties did not argue exceeds the scope of this court's review. *See generally State v. Robison*, 2006 UT 65, ¶¶ 16, 22, 147 P.3d 448 (stating "that '[o]ther than for jurisdictional reasons [the court of appeals] should not normally search the record for unargued and unbriefed reasons to reverse a [district] court judgment'" and discouraging "the court of appeals [from engaging in the] exercise of critical thinking without the engaged participation of the parties whose affairs will be directly affected by the product of that thinking" (first, second, and third alterations in original) (citation omitted)).

Nevertheless, we are sympathetic to the dissent's view. An EMT should be required to respond as quickly as possible when asked to transport a patient who is having a heart attack. Had Carbon County simply carried its burden before the ALJ or the Board to develop those facts on which it now wants us to rely and had Carbon County properly challenged the Board's factual findings on appeal, we could consider them in our analysis. Notwithstanding our sympathetic view, Carbon County must bear some of the responsibility for Marinoni's delayed reaction in responding to the call because, as the Board found, the County had not given its employees clear direction on how to handle a STAT transport request from a nurse—a situation that it now argues, and we agree, is of critical importance.

the Board found credible Marinoni's assertion that he did not think the call was a STAT emergency requiring his immediate response. Such credibility determinations are squarely within the ALJ and Board's duties. *See Drake v. Industrial Comm'n*, 939 P.2d 177, 181 (Utah 1997) ("We give deference to the initial decision maker on questions of fact because it stands in a superior position from which to evaluate and weigh the evidence and assess the credibility and accuracy of witnesses' recollections."); *cf. Valcarce v. Fitzgerald*, 961 P.2d 305, 314 (Utah 1998) ("Trial courts are accorded wide latitude in determining factual matters. They are in the best position to assess the credibility of the witnesses and to gain a sense of the proceeding as a whole."). Given the ALJ and Board's credibility determinations, the substantial evidence that supported the Board's findings, and the "great deference" we give to the Board's findings, *see Swider*, 824 P.2d at 451, we uphold the Board's challenged factual determinations. We now examine Carbon County's legal arguments in light of the Board's factual determinations.

### III. The Board Applied the Correct Legal Standard and Reasonably Determined that Carbon County Failed to Establish Culpability.

¶12 "When we review an agency's application of the law to a particular set of facts," we "will review the agency's decision with only moderate deference." *Autoliv ASP, Inc. v. Department of Workforce Servs.*, 2001 UT App 198, ¶ 16, 29 P.3d 7 (internal quotation marks omitted). "Thus, we will uphold [the Board's] decision so long as it is within the realm of reasonableness and rationality." *Id.* (alteration in original) (internal quotation marks omitted).

¶13 Carbon County argues that the Board applied the wrong legal standard in determining whether Marinoni's actions were culpable. The Board determined that Carbon County had not established culpability because it "did not prove that the conduct was so harmful that discharge was its only option." The Board reasoned that given Marinoni's eighteen years of employment with no similar conduct and Marinoni's "testimony that he did not fully understand [Carbon County]'s policy requiring him to treat this as a STAT transport, a lesser form of discipline should have been sufficient to ensure against any future problems." The Board also determined that Marinoni

> provided credible testimony that he did not believe this was a STAT emergency. That testimony is bolstered by the telephone call with the hospital nurse. When [Marinoni]

told the nurse he would "work on finding someone" to do the transport, the nurse replied "OK." If this had truly been an emergency, it seems the nurse would have said something else.

¶14    To establish culpability,

> [t]he conduct causing the discharge must be so serious that continuing the employment relationship would jeopardize the employer's rightful interest. If the conduct was an isolated incident of poor judgment and there was no expectation it would be continued or repeated, potential harm may not be shown. The claimant's prior work record is an important factor in determining whether the conduct was an isolated incident or a good faith error in judgment. An employer might not be able to demonstrate that a single violation, even though harmful, would be repeated by a long-term employee with an established pattern of complying with the employer's rules. In this instance, depending on the seriousness of the conduct, it may not be necessary for the employer to discharge the claimant to avoid future harm.

Utah Admin. Code R994-405-202(1). As Carbon County recognized, the focus of the culpability analysis is "whether the discharge was necessary to avoid actual or potential harm to the employer's rightful interest." *See Kehl v. Board of Review*, 700 P.2d 1129, 1134 (Utah 1985); *accord Fieeiki v. Department of Workforce Servs.*, 2005 UT App 398, ¶ 4, 122 P.3d 706 (mem.).

¶15    Although Carbon County takes issue with the Board's statement that Carbon County "did not prove that the conduct was so harmful that discharge was the only option," when read in its entirety, the Board applied the correct legal standard in weighing Marinoni's past employment history with the seriousness of his actions in not immediately responding to a STAT call in accordance with Carbon County's unwritten policy. *See Southeastern Utah Ass'n of Local Gov'ts v. Workforce Appeals Bd.*, 2007 UT App 20, ¶¶ 9, 11, 155 P.3d 932 (discussing how the Board weighed the seriousness of the employee's actions with her twenty years of discipline-free work history and affirming the Board's determination that the employee's actions were not culpable because "a strong form of discipline short of termination would have prevented future harm to the

employer"); *see also Mineral Res. Int'l Inc. v. Department of Workforce Servs.*, 2009 UT App 184U, para. 5 (mem.) ("The Board . . . reasonably concluded that because [the e]mployee had not disclosed specific, confidential financial information, the potential harm from [the e]mployee's conduct was not so great as to require discharge."); *Bhatia v. Department of Emp't Sec.*, 834 P.2d 574, 577-79 & n.3 (Utah Ct. App. 1992) (affirming the Board's decision that the employee violated a universal standard of care when the employee was insubordinate by storming out of a busy restaurant and using vulgar language after his supervisor told the employee to return to work and his concerns would be addressed shortly and when this was not an "isolated incident of poor judgment" because during the employee's seven months of employment he had previously used vulgar language and argued with other employees and supervisors).

¶16    Given its credibility determinations, the Board's application of the unchallenged findings to the law was "within the realm of reasonableness and rationality" in determining that Carbon County did not prove that Marinoni's actions were culpable.[6]

---

6. Although the dissent would like us to give more weight to the potential for harm caused by Marinoni's actions, *see infra* ¶ 29, this court's review is limited to whether the Board's determination was reasonable given its findings and not whether we would have weighed the evidence differently or come to a different conclusion if we were reviewing the Board's decision de novo. *See EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 16, 157 P.3d 334 ("It is not this court's place to 'substitute its judgment as between two reasonably conflicting views, even though we may have come to a different conclusion had the case come before us for de novo review.' Similarly, '[i]t is the province of the Board, not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the Board to draw the inferences.'" (alteration in original) (citation omitted) (quoting *Grace Drilling Co. v. Board of Review*, 776 P.2d 63, 68 (Utah Ct. App. 1989))).
     This concept is discussed in the cases on which the dissent relies. *See infra* ¶¶ 24-29. In *Martin v. Department of Workforce Services*, 2004 UT App 264U (mem.), this court reviewed whether the Board acted reasonably in determining that an employee was terminated for just cause because she acted in a culpable manner and she violated a universal standard of care. *See id.* paras. 4, 9. In *Martin*, "[t]he Board determined [that the employer] had established that the conduct that led to [the employee's] termination was prohibited because using [the employer's computer] network to e-mail photographs of naked men violates a universal standard." *Id*. para. 4. Also, in *Bhatia v.*

(continued...)

*See Autoliv ASP, Inc. v. Department of Workforce Servs.*, 2001 UT App 198, ¶ 16, 29 P.3d 7 (internal quotation marks omitted).[7]  Thus, we affirm the Board's determination that Carbon County failed to establish the culpability element of just cause.

IV.  The Board's Determination that Carbon County Failed to Establish Knowledge Is Also "Within the Realm of Reasonableness and Rationality."

¶17    To establish knowledge, Carbon County had to prove that it "provided a clear explanation of the expected behavior or a written policy" about responding to STAT calls from nurses.[8]  *See id.* ¶ 18; *see also* Utah Admin. Code R994-405-202(2).  The Board

---

6.  (...continued)
*Department of Employment Security*, 834 P.2d 574 (Utah Ct. App. 1992), this court accepted the Board's factual findings regarding a universal standard of behavior because Bhatia had not properly marshaled the evidence.  *See id.* at 579-80.  This court upheld as reasonable the Board's determination that Bhatia's conduct "in angrily walking off the job in the middle of a busy shift at a crucial time for the employer's business, leaving others to assume his responsibilities, and his use of vulgarity within the hearing of customers" violated the universal standard.  *See id.* at 576, 579.  In this case, we are not reviewing the reasonableness of a board's universal standard determination because the Board here did not make such a determination.  Instead, we are asked to determine whether the Board's just cause determination, based on the unchallenged findings, was reasonable.

7.  The dissent relies on *Autoliv ASP, Inc. v. Department of Workforce Services*, 2001 UT App 198, 29 P.3d 7, to support its culpability analysis.  *See infra* ¶ 28.  However, *Autoliv*'s analysis was specifically limited to determining the knowledge prong of the just cause analysis.  *See Autoliv*, 2001 UT App 198, ¶ 17.  Additionally, in reversing the Board's conclusion, the *Autoliv* court applied the Board's unchallenged factual findings, *see id.* ¶ 15, rather than relying on facts that were not found by the Board.

8.  The alternative way to establish knowledge is to prove that "the conduct involved is a flagrant violation of a universal standard of behavior."  *See Autoliv ASP, Inc.*, 2001 UT App 198, ¶ 18 (internal quotation marks omitted); *see also* Utah Admin. Code R994-405-202(2).  As we discuss above, *see supra* ¶ 7 & n.3, Carbon County bases its argument about a violation of the universal standard on facts that were not found by the Board.  Moreover, the Board made no legal determination regarding whether

(continued...)

determined that Carbon County failed to establish the knowledge element when it did not prove that Marinoni received either a clear explanation of the behavior expected of him in responding to STAT calls or a written policy regarding the employer's expectations. The Board's findings establish that Carbon County did not have a written policy of how to handle a STAT transport until after Marinoni's termination and that conflicting testimony was given about when the last formal training on STAT transport procedures had occurred. The Board also found Marinoni's testimony credible, specifically his testimony that he believed that a STAT request must be verified by a doctor, that he made a judgment call because the STAT call did not come from a doctor and the nurse did not sound urgent, and "that he believed he was following [Carbon County's] policy and believed he had the authority and experience to determine whether the call from the nurse" should be treated as a STAT call. Based on these unchallenged findings, the Board rationally concluded that Carbon County failed to carry its burden to provide either a clear explanation of the expected behavior or a

---

8. (...continued)

Marinoni's actions violated such a universal standard. Because the Board did not address the universal standard and Carbon County relies on undetermined facts, we are limited in our review.

The dissent asserts that we should not limit our review because of lack of critical findings but instead rely on the undisputed record evidence to make the findings and legal conclusion necessary to support the conclusion that Carbon County established the knowledge element of just cause by demonstrating that Marinoni violated a universal standard. *See infra* ¶¶ 30-31. However, as we discuss above, *see supra* ¶ 10 & n.5, the evidence is not undisputed, and we would be required to make credibility determinations and weigh the evidence to reach the determination advanced by the dissent, *see supra* ¶ 11. Furthermore, the dissent relies on *Smith v. Workforce Appeals Board*, 2011 UT App 68, 252 P.3d 372, in its universal standard analysis. *See infra* ¶ 24. Similar to *Martin* and *Bhatia,* which we examined in our culpability analysis, *see supra* ¶ 16 n.6, the *Smith* court affirmed the Board's decision. *See Smith*, 2011 UT App 68, ¶ 1. In doing so, the *Smith* court did not address whether knowingly driving on a suspended license would violate a universal standard because the parties conceded that it would. *See id.* ¶ 12. Thus, the *Smith* court addressed whether the Board's factual determination that Smith knew he was driving on a suspended license was supported by the record evidence, while relying on the ALJ's determination that Smith's testimony was not credible. *See id.* ¶¶ 13, 16, 18.

written policy.[9]  Thus, we affirm the Board's determination that Carbon County failed to establish the knowledge prong of just cause.

¶18     In conclusion, we affirm the Board's determination that Marinoni is entitled to unemployment benefits because Carbon County failed to establish just cause.

_____

Michele M. Christiansen, Judge

-----

¶19     I CONCUR:

_____

James Z. Davis, Judge

-----

VOROS, Associate Presiding Judge (dissenting):

¶20     I respectfully dissent.  In my judgment, it is unreasonable to conclude that Claimant Wade Marinoni was not culpable and that his conduct here did not violate a universal standard of conduct.

_____

9.  Because we affirm the Board's culpability and knowledge determinations, we do not separately address the Board's control determination.  *See EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 20, 157 P.3d 334; *Albertsons, Inc. v. Department of Emp't Sec.*, 854 P.2d 570, 574 (Utah Ct. App. 1993) ("The failure to establish any one of the three factors is fatal to . . . [the employer's] claim of just cause." (omission and alteration in original) (internal quotation marks omitted)).  However, in order for Carbon County to prevail on appeal, as the dissent argues it should, Carbon County would need to establish that the Board was incorrect on each of the three requirements of just cause, including control.

¶21 The following facts are undisputed. At a doctor's request, Nurse Lex Black called the Carbon County Ambulance Garage to request a STAT transport. Marinoni answered the call and asked, "Why the STAT transport?" Black replied that "[t]he patient was having an active MI with ongoing chest pain and Dr. Frischknecht . . . wanted the patient in the cath lab [in Provo] ASAP." "MI" means "myocardial infarction." A myocardial infarction is a heart attack. *See* Mayo Clinic, http://www.mayoclinic.com/health/heart-attack/DS00094 (last visited Dec. 14, 2011); National Institutes of Health, http://www.nlm.nih.gov/medlineplus/ency /article/000195.htm (last visited Dec. 14, 2011); Merriam-Webster, Medical, http://www. merriam-webster.com/medical/myocardial%20infarction (last visited Dec. 14, 2011). Notwithstanding this clear request, and supporting information as to its source and rationale, Marinoni neither performed a STAT transport nor requested to speak with the doctor. When asked why not, he testified, "I really didn't get the impression from [the nurse] that it was that urgent of a call. And then when I told him I would go ahead and fill it, he stated that was okay."

¶22 Marinoni's misconduct did not end at that point, however. He ended up driving the patient to Provo. The other two EMTs in the ambulance with Marinoni and the patient on that drive described his conduct on the trip.[1] According to these EMTs, Marinoni told one of them, "Get your ass in[,] I'm driving."[2] He "slammed the ambulance into gear and whip[ped] the ambulance out of the hospital parking lot," throwing the patient and the two EMTs around in the back. The patient complained that the driving made the pressure on her chest worse. Once they were on the highway, the other two EMTs checked the speedometer; one said Marinoni was driving between 90 and 95 miles per hour, the other said he was driving between 95 and 100 miles per hour.[3] Finally, one of the EMTs told Marinoni, "Slow down before you kill us."[4]

---

1. Their accounts were uncontroverted except as noted in the footnotes.

2. Marinoni later testified that he did not remember exactly what he said to this EMT.

3. Marinoni later testified that he didn't recall how fast he was driving; he also testified, "I don't think I was going 90-95 miles an hour."

4. Marinoni later testified that all he remembered her saying was that he needed to slow down.

According to one of the EMTs, Marinoni then slowed to 60 or 65 miles per hour "and did not go any faster with a critical [patient]."[5]

¶23    I believe that Marinoni was terminated for just cause because this conduct violated a universal standard of conduct.  The employer "has the burden to prove there was just cause for discharging the claimant," Utah Admin. Code R994-405-203, which is established if three elements are met:  culpability, knowledge of expected conduct, and control over the offending conduct, *see id*. R994-405-202; *Autoliv ASP, Inc. v. Department of Workforce Servs.*, 2001 UT App 198, ¶ 17, 29 P.3d 7.  "Generally, knowledge may not be established unless the employer gave a clear explanation of the expected behavior or had a written policy, except in the case of a violation of a universal standard of conduct."  Utah Admin. Code R994-405-202(2).  "Serious violations of universal standards of conduct do not require prior warning to support a disqualification."  *Id.* R994-405-208(1)(e).

¶24    Violations of a universal standard of conduct are admittedly rare.  But our cases establishing such violations are instructive.  In *Smith v. Workforce Appeals Board*, 2011 UT App 68, 252 P.3d 372, the parties agreed that for an employee to drive a company car on a suspended license violates a universal standard of conduct.  *See id*. ¶ 12.  In *Martin v. Department of Workforce Services*, 2004 UT App 264U (mem.), we approved the Board's determination that "it is inconceivable that [the employee] would have been unaware of the dangers associated with using [her employer's email] network to e-mail

---

5.  In reciting the foregoing facts, I have not, as stated by the majority opinion, "delve[d] into the record to determine whether the [Board's] finding was supported by sufficient evidence."  *Supra* ¶ 10 n.5.  Nor did locating these facts require "searching the record for facts that the Board did not find and the parties did not argue . . . ."  *Id*.  I have merely quoted the evidence upon which the Board relied in finding that "another employee complained that [Marinoni] was driving too fast so he slowed down."  This evidence appears on two pages of the record, which are cited in Carbon County's opening brief.  Admittedly, that brief does not quote "the specific statements made by other EMTs," *Supra* ¶ 10 n.5, but it does summarize them.  Marinoni's driving was also discussed in oral argument. Accordingly, the majority's reference to *State v. Robison* is inapt.  *See State v. Robison*, 2006 UT 65, ¶¶ 22-25, 147 P.3d 448 (reversing the court of appeals for reversing the trial court "on a legal theory that had not been preserved, briefed, or argued").  In any event, while Marinoni's driving was disturbingly unprofessional, I would reverse even if it had been exemplary.

photographs of naked men." *Id.* at para. 6. And in *Bhatia v. Department of Employment Security*, 834 P.2d 574 (Utah Ct. App. 1992), we approved the Board's determination that a pizza restaurant employee who "swore loudly enough for customers to hear and walked off his shift, putting the employer in a serious bind and possibly offending customers" violated a universal standard of conduct. *Id.* at 579-80 (internal quotation marks omitted).

¶25    *Autoliv ASP, Inc. v. Department of Workforce Services*, 2001 UT App 198, 29 P.3d 7, is especially relevant because there we set aside the Board's decision that an employee did not have knowledge of the conduct expected of him. *See id.* ¶ 25. In this pre-*Martin* case, two employees sent coworkers non-business-related emails "containing jokes, photos, and short videos that were sexually explicit and clearly offensive in nature." *Id.* ¶ 9. We found it "'incomprehensible' for the Board to hold that a worker could be unaware of the dangers of having sexually offensive materials, including videos depicting sexual acts, sent between co-workers in a company's computer network." *Id.* ¶ 25.

¶26    Marinoni's conduct was at least as flagrant as the conduct in these cases. The core question here is not complicated. When a patient experiencing an active heart attack needs to be moved, who should decide whether the situation is sufficiently urgent to require a STAT transport: the treating physician, the nurse, or the ambulance driver? I frankly find it inconceivable that, however many people were asked that question, even a single one would choose the ambulance driver. Accordingly, I fail to see how Marinoni could have lacked knowledge that his conduct was inappropriate.

¶27    The existence of culpability is at least as obvious. To establish culpability, "[t]he conduct causing the discharge must be so serious that continuing the employment relationship would jeopardize the employer's rightful interest." Utah Admin. Code R994-405-202(1). Measuring the jeopardy to the employer's rightful interest "require[s] a balancing of the employee's past work record, the employee's length of employment, and the likelihood the conduct will be repeated against the seriousness of the offense and the harm to the employer." *Gibson v. Department of Emp't Sec.*, 840 P.2d 780, 784 (Utah Ct. App. 1992).

¶28    In *Martin,* we approved the Board's determination that, although no one even complained about the employee's emails of naked men, "the very real possibility remained that someone would." 2004 UT App 264U, para. 10 (mem.). In *Bhatia,* we

approved the Board's determination of culpability where the restaurant employee's vulgarity "possibly" offended customers and his "unauthorized departure in the middle of a busy shift placed unexpected pressure on the restaurant staff." 834 P.2d at 579. In *Autoliv,* we agreed with the Board's conclusion that sexually explicit and offensive emails in the workplace "could have subjected the employer to sexual harassment claims." 2001 UT App 198, ¶ 25.

¶29 Without minimizing the dangers posed by the possibility that a coworker might complain about or even sue over offensive emails, or that an employee's vulgarity might be overheard by customers, or that his abrupt departure would leave his coworkers in a bind during a busy shift, the potential harm here is of a different and altogether more serious order. At stake was not merely loss of customers or loss of money, but loss of life. This potential harm outweighs other culpability factors and renders the Board's determination unreasonable.

¶30 Finally, unlike the majority, I do not believe that the Board's failure to enter findings on key facts precludes appellate review. The absence of findings on a critical issue "is an error that usually requires a remand for the purpose of allowing the trial court to make such findings." *Flying Diamond Oil Corp. v. Newton Sheep Co.*, 776 P.2d 618, 622 (Utah 1989). "However, a remand is not necessary if the evidence in the record is undisputed and the appellate court can fairly and properly resolve the case on the record before it." *Id*.

¶31 Indeed, in *Autoliv,* this court reversed the Board on the ground that the employee's behavior violated a universal standard of conduct notwithstanding the Board itself had "focused only on the [employer policy] alternative in its analysis." *Autoliv ASP, Inc. v. Department of Workforce Servs.*, 2001 UT App 198, ¶ 19, 29 P.3d 7. "We would normally reverse and remand to allow the Board to consider the [universal standard] alternative," we stated. *Id*. "However," we continued, "our review of the record persuades us that the claimants' conduct violated a universal standard of behavior and any other determination would be unreasonable." *Id*. I would follow this course here, especially where the facts demonstrating Marinoni's violation of a universal standard of conduct were either not controverted (with respect to his failure

to respond to the initial request for a STAT transport) or not seriously controverted (with respect to his driving).[6]

¶32    For the foregoing reasons, I would set aside the Board's determination on the ground that it exceeds the limits of reasonableness.

_____
J. Frederic Voros Jr.,
Associate Presiding Judge

---

6. In addition, like the employer in *Autoliv*, Carbon County preserved this issue before the Board.  *See* 2001 UT App 198, ¶ 19.